[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the decision of the Zoning Commission of the Town of Simsbury in rejecting the plaintiffs' application CT Page 9310 for a change of zone of their property in the Town of Simsbury.
Aggrievement
The evidence presented to the Court demonstrations, and the Court finds, that the plaintiffs Girard Brothers Corporation, Kathleen A. Baker, Elmer Vincent and Hopmeadow Street Associates own the land which is the subject of this application for zone change. As the owners of the tract(s) in issue the plaintiffs are aggrieved parties. Bossert Corporation v. Norwalk, 157 Conn. 279,285 (1968). The parcels are contiguous and each of the parties has a common interest, with the others, in seeking the requested zone change.
Facts
The parcels which are the subject of the application are located west of the waters of the Farmington River which flows generally south to north through the town of Simsbury. The land sought to be changed in zoning designation is located generally east of the business developed area of downtown Simsbury. The land is adjacent to and east of a relatively new (post 1986) street or road named "Iron Horse Boulevard". This street or road was created to ease the traffic load on the major road which runs through the Center of town, State Route 10, also known as Hopmeadow Street, and to provide easier access to the business property which is located between Route 10 and the relatively new Iron Horse Boulevard.
These four contiguous properties, as well as other property located adjacent to Iron Horse Boulevard, between Iron Horse Boulevard and the Farmington River are presently designated floodplain, which is the Floodplain zone in the Town of Simsbury. This zoning designation for the subject land and other land throughout the town appears to have existed since 1974 when the Floodplain Zoning Regulations were originally promulgated.
The Floodplain Zone, as articulated by the Zoning Regulation (Exhibit 111A Article M, see 1), has as its purpose "To promote public health, safety, and general welfare and to minimize losses caused by periodic flooding."
Permitted uses are open spaces uses provided they do not require buildings, structures, fill, pavement or the storage of equipment or materials. This includes agricultural uses and CT Page 9311 recreational uses.
By Special Permit, buildings for those permitted uses, as well as parking areas for uses within and adjacent to the floodplain, and public roads, may be allowed. Filling is allowed as accessory to permitted uses, or to abutting permitted uses, but not if such filling will retard the flow of the river, or retard storage capacity which alleviates flooding elsewhere.
The zoning regulations define floodplain as: "The floodplain is all land adjacent to the Farmington River which falls below the 160 contour line." (Section M — "Definition.")
The plaintiffs filed this application to change 28 acres of the 182 acres, which comprise the parcels from Floodplain Zone to Simsbury Center Zone A and D. The Simsbury Center zone allows retail, personal and business services, restaurants, professional offices, banks, public and semi-public and institutional uses, inns, and residential uses.
The Zoning Commission, after three public hearings, on February 1, March 1, and March 15, 1993, which generated very substantial public interest, voted unanimously to deny the application on April 5, 1993. The plaintiffs appealed that denial.
The zoning regulations place within the Floodplain zone "all the land adjacent to the Farmington River which falls below the 160 foot contour line" The applicants contend that the floodplain zone land should be that property which falls within the boundary of the "100-Year Flood Zone established by the Federal Emergency Management Agency `(FEMA line)'" Because the FEMA line is at elevation 156 and 157 (approximate mean 156.5), if that lower line of FEMA were used for the floodplain line the plaintiff's property would be above the floodplain designation. If the 160 ft. contour line continues to be used the plaintiffs' property is within the floodplain.
The Plan of Development of the Town of Simsbury, adopted by the Planning Commission, "Adopted June 1983" (EXHIBIT 110) lists certain goals, policies and objectives. Under the caption "the environment and Environmentally Sensitive Areas", Policy 7 is captioned "Encourage land uses compatible with the Conservation of the Farmington River and its floodplain, recognizing the unique natural aesthetics and recreational attributes of the CT Page 9312 river. Objective A. Modify the Floodplain Zone in the Simsbury Zoning Regulations and the Zoning Map to be coincidental with the Federal Emergency Management Agency (FEMA) Flood Maps, 100-year Flood Zone."
The plaintiffs contend that the failure to apply the FEMA 100-year Flood Line in determining this application was an abuse of discretion, and that the zone should have been changed in accordance with the application.
Discussion
The plaintiffs have briefed nine issues which they claim warrant a sustaining of the appeal.
Issue #1
That the Commission failed to "Consider Objective A of Policy 7 of the Plan of Development of the Town of Simsbury."
General Statutes 8-2(a) states in part "In adopting such regulations the commission shall consider the plan of development prepared under section 8-23." As to this statute's applicability the defendant contends, as a start, that the applicable statute for changes of zone is General Statute 8-3a(b) which provides in part ". . . proposed zoning regulations on boundaries or changes thereof shall be referred to such Planning Commission for a report at least five days before the date assigned for a public hearing to be held thereon."
Simsbury has a separate zoning commission and separate planning commission. Because CGS 8-3a(b) would be applicable to the application for change of zone, the defendant claims that as this statute, CGS 8-3a(b), is the particular relevant statute as pertains to this application.
Regardless of which of these statutes is deemed applicable to the instant case, the result is the same. The Simsbury Planning Commission adopted the Plan of Development in June 1983. Section8-3a(b), General Statutes provides that, where there is a separate Planning Commission, "proposed zoning regulations or boundaries or changes thereof" shall be referred to the Planning Commission for a report to the Zoning Commission "Containing its findings of the consistency of the proposed change with the plan of development of the municipality and any other recommendations CT Page 9313 the planning Commission deems relevant." A proposal disapproved by the Planning Commission may then be adopted by the Zoning Commission by a vote of not less than two thirds of all the members of the Zoning Commission. (General Statutes 8-3a(b). The plaintiff seeks to change the zone in which the property is located, from one zone to another. General Statutes 8-3a(b) is the procedural statute applicable to this zone change application. The defendant complied with the provisions of General Statutes 8-3a(b).
The court notes that certain procedural difficulties present themselves by virtue of the character of the application. It appears that in order to accomplish the purposes of the application the Zoning Regulations itself would have to be changed, as the regulations automatically place "all the land
adjacent to the Farmington River which falls below the 160 Contour line" in the Flood Plain zone. It is difficult, to envision how a Zoning Commission in the format of an application for a change of zone, could take a parcel of property out of a zone when the Zoning Regulations itself physically confines that property, by its actual geography, exclusively within only its present zone, here the Flood Plain zone. This can of course be accomplished by a change in the zoning regulation itself, changing the physical geographical criteria for Flood Plain, either for general applicability throughout the town, or for a specific location or locations, thereby releasing property from the Floodplain Zone. Alternatively, or in conjunction therewith, the Zoning Regulations may be ammended [amended] to allow additional uses, as permitted uses or a special permit uses, within the Floodplain Zone. The defendant, in its brief, properly points out that the granting of the change of zone as applied for would be tantamount to a de facto abrogation of zoning regulations as concerns the 160 feet contour line.
The other method of placing property to uses not presently allowed by zoning in its particular zone is to seek a variance from the Zoning Board of Appeals (General Statutes 8-6.)
The present application is, on its face, not a request for an amendment or repeal of the Ordinance, under Article Thirteen of the zoning regulations, which provide for citizen petition as, provided by General Statutes 8-3(). See use of this procedure inProtect Hamden v. Planning and Zoning Commission, 220 Conn. 527,530 (1971). Nor is the application an application for a variance directed to the Zoning Board of Appeals. CT Page 9314
Nonetheless the Court will address the specific claims set forth in the appeal, notwithstanding the inherent procedural and substantive problems of a Zoning Commission taking property out of zones to which they are physically relegated by the Zoning Regulations and placing them into zones in which they are not physically allowed under the provisions of the Zoning Regulations. The provisions of General Statute Section 8-2(a) would be applicable to changes in the regulations and to changes in zone. There is no significant difference between adopting regulations and zoning boundaries in the first instance and later adopting new regulations or boundaries which are different than prior regulations or boundaries. The procedural mechanism of General Statutes 8-3a is required to be employed by the existence of speparate [separate] planning and zoning commissions. Although a larger affirmative vote is required of the Zoning Commission (2/3) in the event of an unfavorable report of the Planning Commission, yet the inherent responsibility remains with the Zoning Commission, applying the criteria of General Statutes 8-2.
The plaintiffs misunderstand the word consider. The Zoning Commission must consider the Plan of Development. The hearing record is replete with references to the FEMA 100-Year Flood Zone. The plaintiff's own expert described the FEMA line in detail, by use of a specific map, showing the FEMA line as varying from 163 feet at the Avon line to a low of 136 feet. (transcript P. 4, 5). It was carefully pointed out to the Commission that the 1983 Plan of Development recommended the adoption of the FEMA line. The major substantive issue before the Commission was whether the 160 feet contour line, as adopted by the regulations, or conversely the FEMA line recommended by the 1983 Plan of Development was the appropriate line which should be used for flood protection. The record is clear, and it is beyond question, that the Commission considered both the present line and the 1983 FEMA recommendation in arriving at its decision.
It appears that the plaintiffs are contending, in this appeal, that the word "consider" is synonymous with and in fact means, that the Commission must adopt each recommendation of the Plan of Development, and in fact must be bound by each 1983 recommendation. Such an inference finds no support in law or in the common understanding of that term within the context of the English language. "`Consider'; to look at attentively; to examine." Webster, New Collegiate Dictionary, 2nd edition. CT Page 9315
The Zoning Commission considered the 1983 FEMA recommendation of the Planning Commission as recommended in 1983 in the Plan of Development. Not only did the Zoning Commission reject adoption of the FEMA line but the Planning Commission, the same Commission which adopted, in 1983, the 1983 Plan of Development, recommended to the Zoning Commission, by its letter of February 17, 1993 that the Zoning Commission reject the application for change of zone for this Floodplain property so as to guard against encroachment into the Floodplain property. Whether the application can be considered, expansively, to be an application to amend the zoning regulations, or a procedurally proper application for a change of zone, yet the plaintiffs' contention that the Zoning Commission failed to consider the Plan of Development as concerns the application is not supported by the record. The reason for appeal is rejected by the court.
Issue #2
The plaintiffs claim that the parcels are not "adjacent" to the Farmington River as is definitionally required of all land located in the Floodplain Zone.
The plaintiffs claim that, though the land which is the subject of the application is within the 160 feet contour line, the land consists of several parcels. Therefore, plaintiffs contend, only parcels which abut the waters of the Farmington River can be considered as land "adjacent" to the Farmington River.
On its face this contention is without rational foundation. The ordinance uses the term "land", not "parcel." Land is "earth" in the common parlance of mankind, "The solid part of the surface of the earth." Webster's New Collegiate Dictionary, supra. A parcel is nothing more than an artificial division of land, earth, for the purpose of dividing the ownership of land. The term "land" as used in the ordinance is not ambiguous and requires no further interpretation by the Court. To accede to the plaintiffs' contention would allow individuals to deed away small portions of land touching the river waters and to thereby cause any floodplain designations to be meaningless. Land, earth, which is within the 160 feet contour line, directly proximate to the river, is adjacent thereto, regardless of who owns that land. This assignment, Issue #2, is without basis and is rejected by the Court. CT Page 9316
Issue #3
The televising of the application, in conjunction with the Planning Request and the reading of the Legal Advice to the Defendant during the pendency of the application represents an illegal, conserted effort to deny the application.
This assignment of error presents four specific arguments to advance this contention that there existed some type of a conspiracy by undefined conspirators to deny the application.
First, the plaintiffs claim that because public access television covered these hearings, and that public service television allegedly does not cover all town hearings, there must be something amiss. Suffice it to say that the plaintiffs do not point to any part of the record or any evidence to support this alleged inference. Furthermore as is evidenced by the comments in the record the application generated more public interest than any other zoning matter in recent years. It would be beyond comprehension why public interest television, designed to serve the local community, would not cover a matter of such widespread public interest.
Second, the plaintiffs contend that the town attorney advised the Board as to the proper technical means to accomplish a decision in the application. Zoning Boards are composed of laymen. Not only is it not illegal for such boards to seek the legal advice of its counsel on proper legal methods and procedures, but rather it is advisable so that proper decisions by a board will not fail by virtue of a technical failure of a substantively proper decision. The meeting referred to was a general meeting between the Town Attorney and the various land use boards and commissions of the town. The meeting covered a multitude of subjects including variances, inland wetland, the role of building inspectors, ex parte communications and the like. It was educational, and non-specific as to any matter pending before any board or commission. The town attorney excluded the prospect of any reference to any matter pending before any board or commission. The plaintiffs' application was not referenced in any fashion, either directly or by any remote inference. There is no evidence to indicate that the attorney alluded to recommended, or suggested to the board anything concerning this application, and therefore no evidence to indicate that the substantive decision of the Commission was based on any advice, suggestion or recommendation of the attorney. See also Spero vs. Zoning BoardCT Page 9317of Appeals, 217 Conn. 435, 443-445 (1991).
Third, it is claimed that because the Planning Commission issued a general recommendation for the study of regulations for land adjacent to the Farmington River two days after the Conservation Commission/Inland Wetlands Commission issued a positive referral, this inferentially was part of a "concerted effort" to deny the application. There is nothing in the record or in the evidence to support a contention that one activity had anything to do with the other, or that one recommending agency was engaged in any contentious dispute with the other. The functions of these agencies are separate and distinct, and deal with dissimilar concerns.
Fourth, that because the plaintiffs had a permit from the Army Corps of Engineers and from the Conservation Commission/Inland Wetlands and Watercourse Agency for use of the property, and the further fact of the FEMA line, equity should require that the Court overturn the decision of the Zoning Commission.
The Court finds no evidence to support a contention of "an illegal concerted effort to deny the application." The function of deciding this application is that of the Zoning Commission, not the Army Corps or the Wetlands Agency. The Court will not and cannot usurp the function of the Zoning Commission to accomplish an unwarranted reversal of the Commission's decision under the guise of "equity". See First Hartford Realty Corp. v. Planningand Zoning Commission, 165 Conn. 533, 540 (1973).
Issue #4
Essentially, that the Commission failed to accept the testimony of the plaintiff's expert as to the physical location of the FEMA line.
There is nothing in the record to indicate that the Commission failed to accept the testimony as to the physical location of the FEMA line. The issue before the board was whether the FEMA line should be applied to the application in disregard of the Zoning Regulations designating the 160 feet contour line — not where is the FEMA line. The location of the FEMA line was not a matter of dispute before the Commission.
The plaintiffs appear to argue, in this reason for appeal, that since the FEMA line has been identified the Commission is CT Page 9318 bound by that line as an uncontrovertible line of protection against flooding regardless of the existence of conflicting testimony, including testimony as to the extent of actual flooding which has occurred in the past.
The record reveals that there was evidence before the Commission that the Army Corps of Engineers at one time set the 100 year flood line at 162 feet, six feet above the FEMA line and two feet above the existing zoning 160 feet contour. There was evidence before the Commission from a Mr. John Carrol, a geologist and hydrologist, that the present zoning line, the 160 feet contour, represents the line of contact between the glacial cut of the river and the sediments deposited by flood waters of the modern Farmington River. There was evidence, by eyewitness observations of citizens, that in the past the flooding of the river has extended substantially beyond the FEMA line and into the basements of some of the existing business establishments.
There is no claim of pre-emption by the Federal Government (Federal Emergency Management Agency — FEMA) so as to preclude the adoption or retention of a flood zone at a higher elevation than that of the FEMA line. Hence the mere fact of an uncontroverted physical location of the FEMA line does not support a conclusion that there was "but a single conclusion which the zoning authority could reach." The plaintiff's reliance upon the case of Thorne v. Zoning Commission, 178 Conn. 198 is misplaced and inappropriate. This reason for appeal cannot be sustained.
Issues 5, 6
The denial of the application is illegal since it is not based on published standards; and that the application satisfied the "intent" of the Floodplain Zoning Regulations".
First, the published standard of the floodplain regulation is very clear. It is the 160 feet contour line (Regulations, Section M Definitions, p. 32). It is not conceivable that the plaintiffs were unaware of this published standard. The intent of the ordinance is ". . . to minimize losses caused by periodic flooding." (Regulations, Sec. M P. 30).
This further basis for this reason for appeal, under this section of the plaintiff's brief, is that because the plaintiffs' engineer testified that in his opinion the application complied CT Page 9319 with the intent of the regulation, the Commission was required to accept his interpretation of the intent thereof and to comply with that interpretation. It is the duty, function and prerogative of the Zoning Commission to interpret the regulations, and to apply the evidence received and its own knowledge of the local community in determining applications. This duty is non-delegable and cannot merely be assigned to any other person, including the plaintiffs' engineer. The case ofStrong v. Conservation Commission, 28 Conn. App. 435, 441 (1992) does not support the plaintiffs' contention that a board must accept the opinion of the plaintiffs or their engineer as to the propriety of changing zones for a particular property. Also seeSamperi v. Inland Wetlands Agency, 226 Conn. 579, 597 (1993). These reasons for the appeal are without merit.
Issues 7 and 8
The defendant received information from the public outside of the public hearing; and
This allegedly denied the plaintiffs their due process rights under the United States and Connecticut Constitutions.
The Court heard evidence on this claim. Two members of the Commission were called to testify. A videotape showed a person making a comment to another person at the conclusion of the March 1 hearing. As best can be discerned he said he has been in Simsbury for 15 years, likes the flood plain and to leave it alone.
Neither of the commissioners who testified heard the comment, and of course could not and did not repeat it, as it was not heard. The comment was not related to them by anyone. The plaintiff has withdrawn this claim, on the record at oral argument — and properly so as the comment, even if heard, would be nothing more than a personal non-factual general statement of opposition which would have added or subtracted nothing from the factual basis of the decisions. The claims alleged by this statement of issues are without merit, and would have been accordingly so determined if not withdrawn by the plaintiffs.
Issue #9
The reason for the denial of the application set forth in Exhibit 102 of the Return of Record were not properly voted upon CT Page 9320 by the Commission.
Although the brief alludes to Section 5a of the brief in explanation of this claim, it does not appear that the claim is sepcifically [specifically] articulated in that section. Nonetheless, the issue having been raised, the Court addresses the issue.
At the April 5, 1993 session, prior to actually voting on a formal motion concerning the application, each of the members set forth their specific observation concerning the application. Those comments included the lack of convincing reason to alter the 160 feet floodplain contour line for this parcel, with some suggestion that a change in the floodplain zone contour line for the town may in the future be appropriate to address as a special agenda item rather than in the context of a single application for one specific body of land. (See this memorandum, supra, re Amendment to Ordinance as to the proper procedure to change the Floodplain designation).
Comments also included the fact, from the evidence, that the sewerage plant capacity was designed with the zoning designation of non-residential and non-business use of floodplain property in mind, and that that interceptor line (i.e. sewer pipe) which runs along the service road Iron Horse Boulevard, is inadequate to accept the discharge from the usage which would result from the potential uses allowed by such a requested change of zone.
Comment was made that there is presently a lot of property available in the town for economic-business development, which is supported in the record by testimony as to substantial vacancy in presently zoned business/commercial zoned property. The Court notes that the Plan of Development recommends restriction of expansion of business zones along Hopmeadow Street, and also recommends clustering of buildings in existing available commercial sites, and further recommends designating additional commercial business zoned land only when the need is clearly shown.
Notice is further taken that the Planning Commission on February 17, 1993 unanimously recommended that the application be denied.
What appears to be overlooked by the plaintiffs in this matter is that even if the Zoning Commission determined to CT Page 9321 extract this property from the Floodplain zone for the purposes of this application, in contradiction of the physical geographic mandate of the zoning regulations itself, which may well be beyond the power of the Commission without first amending the ordinance — yet such a removal from the floodplain zone would not have resulted in a change to the Simsbury Center Zone as sought by the application, for the reasons articulated by the Zoning Commission and supported by the record.
The Zoning Commission, upon voting unanimously to deny the application set forth its reasons: Public health and safety and danger from flood; lack of need for the proposed use in the proposed location; inconsistent with the Plan of Development; inconsistent with zoning regulations; inconsistent with the design and purpose for Iron Horse Boulevard; no sewer allocation for the property.
General Statutes 8-3(c) provides "Whenever such Commission makes any change in a regulation or boundary it shall state upon its records the reason why such change is made". No such requisite exists when the Commission declines to change a zone. Also seeZenga v. Zebrowski, 170 Conn. 55, 61 (1975) specifically affirming the non-necessity of stating reasons for rejection on its records.
In the instant case individual board members, prior to the vote, stated individual reasons for voting to deny the application. Thereafter, upon the vote being taken, the board set forth its collective reasons.
The plaintiff appears to claim that the reasons must be set forth in the form of a motion, collectively, as part of the motion to disapprove, and collectively articulated prior to the vote, to be considered the reasons of the board itself. The argument fails for two reasons. First, the board declared its collective reasons immediately subsequent to the unanimous negative vote. Hence the record does not merely represent the individual personal reasons of the individual members, as argued in Welsh v. Zoning Board of Appeals, 158 Conn. 208, 214 (1969), but rather properly reflects the collective reasons of the Board.
As a further matter of inquiry the Court has searched the record, as reflected in the body of this decision and determines that the decision of the board is related to public health and safety concerning danger from flood; to the lack of need or CT Page 9322 appropriateness of expanding the nearby Simsbury Center Zone; to the inconsistency of the application as concerns the Plan of Development; and in placing excessive demands upon the sewerage system; all of which are fully supported by the record and are proper, and legitimate bases which require that the Court uphold the decision of the Commission. See Parks v. Planning and ZoningCommission, 178 Conn. 657, 661-662 (1979); First Hartford RealtyCorporation v. Planning and Zoning Commission, 165 Conn. 533, 543
(1973).
In determining applications for change in zoning regulations, and changes in zone, the zoning commission acts in a legislative capacity, which discretion is "wide and liberal" and will not be disturbed by the Court unless the board acted "arbitrarily or illegally" Protect Hamden v. Planning and Zoning Commission,220 Conn. 527, 543 (1991).
The action of the zoning commission must be sustained if even one of the reasons is sufficient to support it. Primerica v.Planning and Zoning Commission, 211 Conn. 85, 96 (1989).
The reasons given by the zoning commission, and the independent search of the record by the Court fully supports the decision of the Zoning Commission. For the reasons set forth herein the Court affirms the decision of the Zoning Commission of the Town of Simsbury, and the appeal is accordingly dismissed.
L. Paul Sullivan, J.