Following an extended period of study and discussion, the town of Westport, on September 8, 1930, adopted zoning regulations designed to provide a well-considered and comprehensive plan of town development, rather than a haphazard uncontrolled community growth. The original regulations divided the municipality into three classes of districts: Residence "A" districts, Residence "B" districts, and Business Districts; while amendments have added an "A A" Residence District plus a temporary zone for veterans' housing.
Through this litigation, the town of Westport, its zoning and planning commission, and its zoning enforcement officer seek to enjoin the defendants, David Kellems and Vivien Kellems, partners operating under the name of The Kellems Company, from manufacturing wire cable grips, and operation concededly of a light industrial character, in an area classified as a "business zone." It is said that the manufacturing process is not only violative of existing zoning regulations, since Westport's "business zone" forbids industrial uses save those "clearly incidental to the conduct of a retail business conducted on the premises" — and the Kellems' make no claim that their operation is in any *Page 487 
way related to retail activity — but also is a deliberate and studied attempt to flout existing zoning regulations since the Kellems' industrial use was not commenced until 1942, some twelve years after the regulations became effective.
By way of justification or explanation of their manufacturing in a "business zone," the Kellems' offer five defenses to this action: the first being that the zoning regulations are void in that they violate Connecticut's general policy of encouraging and stimulating industrial growth; the second, third and fourth being that the zoning regulations, as applied, deny the defendants equal protection of the laws in violation of the United States and Connecticut constitutions in that they are deprived of their property without due process of law; and the fifth being that the town of Westport is not entitled to relief because enforcement officials of the town have been guilty of inordinate delay amounting to laches, which delay now estops the town from pursuing its claims.
The defendants' property consists of an approximate two-acre tract of land situated between Riverside Avenue and Franklin Street in the Saugatuck area of Westport, together with a one-story white frame building housing some fifteen machines including a turret lathe, small lathes, milling machines, welding machines and other experimental and manufacturing equipment. To the north of this property is located a two-story yellow frame building, leased by the defendants, wherein is conducted a very substantial part of their manufacturing, consisting in fabricating wire into cable grips in sizes from one-half inch to four inches in diameter. The fabricating process requires the constant use of forming tools, winding lathes and solder pots, and the operation of a variety of machines driven by electric motors. At the time of trial the defendants employed thirty-eight persons in their manufacturing operation; an employee load far below the peak of 150 persons employed during the recent war years.
Westport is a principal residential community located on Long Island Sound between Bridgeport and Norwalk. Its 13,622 acres are divided as follows by the town's zoning regulations: "A A" Residence Zone, 8240 acres; "A" Residence Zone, 4963 acres; "B" Residence Zone, 88 acres; Business Zone, 360 acres; and temporary Veterans' Housing Zone, 11 acres. Thus, of Westport's total acreage, over 97 per cent of the entire community is zoned for residential uses, while some 60 per cent of *Page 488 
the gross acreage is reserved to the "A A" residence zone, wherein every single family dwelling must occupy an acre of land. Obviously, then, the basic desire of the community, as expressed in its zoning enactments, is that the town shall be essentially residential, free from the intrusion of industry and manufacturing, devoted to wholesome living in the interest of public health, safety and general welfare, as well as the conservation of property values. It is a necessary inference that the exclusion of most business uses from a residential zone bears a reasonable relation to public health and welfare; hence the exclusion is within the police power of the state. Fitzgerald v. Merard Holding Co.,110 Conn. 130, 138. "Zoning regulations are adopted in the exercise of the police power of the state and to be valid must have a rational relation to the health, safety, welfare and prosperity of the community." Strain v. Mims, 123 Conn. 275, 285.
The defendants' challenge to the town's zoning regulations, while many-sided, may be summarized in the general contentions that the regulations are not uniform for each class or kind of building or structure in the Saugatuck district since other buildings in that business district are used for manufacturing purposes, either by virtue of the fact that they were thus used when the regulations became effective and thereafter continued as nonconforming uses, or by virtue of the regulation permitting industrial uses in a business district when such uses are clearly incidental to the conduct of a retail business conducted on the premises; that the prohibition of industrial use of the defendants' premises estops them from making the highest and best use of their property; that the Saugatuck district should be an industrial or manufacturing area and that a restraint on industry creates an arbitrary and unlawful limitation; and that the prohibition against light industry amounts to an unconstitutional taking of property without due process of law.
Saugatuck, the most densely populated area of Westport is, in reality, a community within a community, containing as it does, a very substantial number of moderate and low-priced residences; a number of large and valuable estates, whose assessed valuations exceed half a million dollars; a variety of retail stores, whose right to operate in a business zone is unquestioned; a community coal and lumber yard; and a sprinkling of properties, which, when the zoning regulations were adopted, were devoted to nonconforming industrial and manufacturing uses and which, by law, were permitted to continue without suppression. *Page 489 
Westport's aggregate assessments, constituting its grand list, total $48,000,000, and of this sum but $600,000 represents the valuation of personal and real property devoted to manufacturing and industrial uses. Assessments in the Saugatuck area total approximately one and one-quarter million dollars, 75 per cent of which is represented by residential and business uses. These figures, in my judgment, offer persuasive evidence of the fact that Westport as a whole is, as it was intended to be, dominantly a residential community, and that Saugatuck, although to a lesser degree, follows the general community pattern in marked and striking fashion.
It is fundamental that zoning legislation is a valid exercise of the police power within proper limitations; State v. Hillman,110 Conn. 92, 100; and it is equally clear that the ultimate object of zoning is to confine certain classes of buildings and uses to designated localities. Darien v. Webb, 115 Conn. 581, 585. While the idea of comprehensive zoning is comparatively recent, nonetheless its intrinsic value has been demonstrated in the orderly expansion of municipalities and in the systematic location of a multiplicity of enterprises. Westport's approach to zoning was not an inattentive or casual act; rather it appears to have been a foresighted and prudent endeavor intended to safeguard the community for residential purposes and, at the same time, to permit a sufficiency of commerce and business so as to fulfill community wants. Generally speaking, there is no rule or standard which may be inexorably applied to any one municipality. Each, acting reasonably, may adopt plans suitable to its own location and needs. Matter of Fox Meadow Estates, Inc.,
v. Culley, 261 N.Y. 506. It cannot be argued with conviction that Westport's regulations fail to provide a comprehensive plan of zoning, since the town has been divided into districts according to maximum fitness and appropriateness for intended uses. A "comprehensive plan of zoning," as the phrase is used in Connecticut's general zoning laws, means a general plan to control the use of property by dividing it into districts according to present and potential uses. Bishop v. Board of ZoningAppeals, 133 Conn. 614, 618.
Since the division of a municipality into districts is committed to the legislative body of each municipality, the exercise of such power, within constitutional limitations, depends largely upon the discretion and good judgment of the municipal authorities, with which the courts are reluctant to interfere. And *Page 490 
where residents, such as the defendants, seek to attack zoning regulations as confiscatory and unconstitutional, they have the burden of overcoming the presumption of constitutionality and must demonstrate that, as a matter of law, the regulations are unconstitutional and that there is no permissible interpretation which justifies their adoption as a reasonable exercise of the police power. Gorieb v. Fox, 274 U.S. 603. Westport's zoning, as it affects the Saugatuck area, operates with substantial equality on all persons and classes similarly situated and in this respect meets the test of constitutionality. Likewise, the regulations are not fatally defective in that they exclude industry and manufacturing from a business zone. Euclid v. Ambler Realty Co.,272 U.S. 365.
The standard by which Westport's regulations are to be scrutinized is to be found in General Statutes, § 424, providing: "Such regulations shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements." A personal inspection of the affected area satisfies me that the Saugatuck district poses Westport's most complicated traffic problem in that a vast number of commuters use the principal arteries of the locality to carry them to the railroad station, located but a few hundred feet from the defendants' plants. Likewise, the school children of the area are required to use the same principal arteries to reach the district school, also located a comparatively short distance from the defendants' industrial buildings. If industry is permitted to continue or expand, then inevitably there will be a substantial increase of street congestion with consequent hazard from fire and other dangers and with added exposure to school children.
I conclude, therefore, that the town's zoning regulations, as presently drafted, do not offend the statutory mandate in the matters of safety and health and general welfare. They are equitable and constitutional and do not pass the bounds of reason to assume the character of merely arbitrary fiat. The defendants have permitted and allowed and are conducting and operating a manufacturing establishment within a business zone in violation of valid zoning regulations. *Page 491 
The defendants take nothing from their claim that the town of Westport is not entitled to claim equitable relief because it is estopped to do so and also because it has been guilty of laches. The rule is that although an estoppel may be raised against a municipality by acts of its agents in connection with a contract, particularly if that contract is one entered into in its corporate capacity, no acts of its agents can estop a municipality from enforcing the law where it is acting in its governmental capacity.Brooklyn Trust Co. v. Hebron, 51 Conn. 22; Nicholaus v.Bridgeport, 117 Conn. 398; Newington v. Mazzoccoli, 14 Conn. Sup. 459. Laches does not bar the state or a municipality from enforcing governmental rights. Appeal of Phillips, 113 Conn. 40.
 Accordingly, on the complaint and the counterclaims the issues are found for the plaintiffs. The defendants, and each of them, may be enjoined and restrained from using or permitting to be used for industrial or manufacturing purposes their land and the buildings thereon standing, as well as the leased building adjoining the aforesaid land, all as described in the complaint, after December 1, 1948, under penalty of $5000. By reason of the defendants' failure to discontinue the zone violation within ten days from receipt of notice ordering such discontinuance, the civil penalty of $250 provided by General Statutes, § 430, is hereby assessed.