[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO STRIKE
This is an action brought on twelve counts by the plaintiff Commissioner of Environmental Protection seeking an injunction and penalties pursuant to various state environmental protection statutes.
The defendants, who are alleged to be the current owners of a mine in Brookfield, Connecticut filed an answer and seven special defenses. The plaintiff has filed a motion to strike the second through the seventh special defense.
Practice Book § 152 sets forth the general standards governing a motion to strike. When a trial court rules on such a motion, all well-pleaded facts and appropriate inferences from those facts are deemed admitted, D'Ulise-CUPO v. Board ofDirectors of Notre Dame H.S., 202 Conn. 206, 208 (1987). Also the pleadings must be construed in a manner most favorable to a pleader, Verdon v. Transamerica Ins. Co., 187 Conn. 363, 365
(1982).
The special defenses assert various defenses to this action by the plaintiff. The Second Special Defense sets forth a defense under the doctrine of laches. The Third Special Defense asserts that a permit to operate the mine should be deemed to have been granted by operation of law thus precluding this action insofar as it is based on operation without a permit. The Fourth Special Defense asserts the plaintiff Commissioner cannot bring this action because he has failed to exhaust his administrative remedies. The Fifth Special Defense maintains that the plaintiff is estopped from bringing this action. The Seventh Special Defense argues that there is an "innocent landowner" defense to two counts of the complaint.
1.
Second Special Defense:Laches.
As the defendants note the doctrine of laches consists of two elements; (1) an inexcusable delay by the party against whom laches is sought; (2) the delay prejudiced the defendant,Kurzatkowski v. Kurzatkowski, 142 Conn. 680, 685 (1955). The defendants concede that "the doctrine of laches may not be invoked against a governmental agency, Aronson v. Foohey,42 Conn. Sup. 348, 355 (1992), Westport v. Kellems Co.15 Conn. Sup. 485, CT Page 3976 491 (1948). Appeal of Phillips, 113 Conn. 40 (1931).
The defendants maintain however, that they are not arguing that the Commissioner be barred from enforcing any of his governmental rights or responsibilities. Instead, they want him to comply with his duties under RCSA 22a-38-5(c)(3)(B) which states that:
 . . "if an application for license renewal is timely but insufficient and the Commissioner does not send notice of the insufficiency until thirty days before the expiration date of the existing license, and the Commissioner finds in his sole discretion and in writing, that the applicant made best efforts to submit a sufficient application and did not contribute to any delay in the Commissioner's ability to process the application, the existing license shall continue in effect . .")
The defendants contend that on or about June 15, 1988, their predecessor filed a diversion permit application and the Commissioner failed to notify the applicant within thirty days of the receipt of the application whether additional information was required pursuant to § 22a-371(a) of the general statutes.
Thus, the defendants argues this action for an injunction and penalties five years after the June 1988 application submission should be barred by laches.
The defendants make an interesting argument but it is difficult to understand how it can be said to sanction the use of the doctrine of laches against a governmental agency. The reason why the doctrine cannot be so used is revealed in the language of the cases: "Laches does not bar the state or a municipality from enforcing governmental rights, Westport v. Kellums, supra p. 491." Similarly, it has been held that although an estoppel defense can be raised against a town or the state based on the action of their agents in connection with a contract; however, no acts of its agents can estop a town of the state "where (they are) acting in (their) governmental capacity," Westport v.Kellems Co., supra at p. 491. In Aronson v. Foohey, supra at page 355 the court accepted the argument that the doctrine of laches does "not operate to bar state agencies from enforcing public rights," cf. Nicholaus v. Bridgeport, 117 Conn. 398, 401-402
(1933), Commissioner of DeMilo Co., Inc., 2 Conn. Sup. Ct. Rep. CT Page 3977 880 (1987).
The basis of the rule that laches and in most cases estoppel cannot be applied against a governmental agency appears to be that the public interest in seeing to it that the goals of particular regulatory provisions be carried out cannot be thwarted by the act or failure to act of an individual state bureaucrat. For the same reason it has been held that administrative delay does not justify the dismissal of an action where the interests of third parties let alone the public in general is at stake, NLRB v. Rutter-Rex Mfg. Co., 396 U.S. 258
(1969). Where there is unreasonable delay by an agency in acting upon a permit application perhaps a court order compelling such action can be resorted to; this is provided for in the Federal Administrative Procedure Act. Also, perhaps, the administrative agency at the hearing on the injunction should not be able to rely on the fact that because it seeks a statutory injunction it need not show irreparable harm if agency delay can be shown to have forestalled an administrative hearing on the permit application, TVA v. Hill, 437 U.S. 153, 172 (1978), Water ResourcesCommissioner v. Conn. Sand Storage Co., 170 Conn. 27, 30-33
(1975), STC v. Pacetti, et al, 13 Conn. Law Rptr. 420, 427 (1995).
However, such administrative delay is not a defense to an agency request for relief where a defendant is alleged to have operated a business without the permit required by an act designed to protect state water resources.[1]
The legislature could I suppose provide that in particular situations the doctrine of laches could be asserted in court against a state agency seeking judicial relief. The agency itself could perhaps permit such a defense through a regulation at least if the regulation is made as an interpretation of statutorily granted power to the agency and not as a gratuitous derogation of rights granted to the agency by statute. But such a result would have to be explicitly provided for in a state statute or agency regulation. RCSA 22a-38-5(c)(3)(B), previously quoted, does not explicitly provide that the doctrine of laches can be raised against the agency. In fact, the regulation provides that the Commissioner may take certain ameliorative action but only in his or her sole discretion.
The defendants in their Second Special Defense are not alleging the Commissioner abused his discretion in failing to CT Page 3978 find in his "sole discretion" that a license or permit should continue despite the fact that the application submitted for the license was insufficient. They simply assert the doctrine of laches should apply because of the DEP's "five year delay in delinquently seeking injunctive relief and forfeiture" (par. 12 
13 of Second Special Defense). The defendants' reliance on this regulation really involves an exercise in circular reasoning. Clearly, the Commissioner has not exercised any discretion he might have in order to permit the license involved here to continue. Then the question becomes can the defendants assert the doctrine of laches based on the delay. Relying on the previous discussion and the cases cites, I believe this defense cannot be used at least under any of the circumstances alleged here. The Second Defense is stricken.
2.
Third Special Defense:Permit Granted by Operation of Law.
In their Third Special Defense the defendants argue that the permit should be granted by operation of law. They basically claim that because the Commissioner did not act in a timely fashion on the diversion permit application, the application has been granted by operation of law.
Both sides concede that Caron v. Inland Wetlands Watercourse Commission, 222 Conn. 269, 273 (1992) controls. That case set forth the situations where an agency's failure to act within certain time limits results in automatic approval of an application.
 "(1) The statute contains express language invalidating belated action by the agency or automatically approving an application not acted upon within the required time period; . . .
 (2) The statute contains a provision requiring an applicant's consent for an extension of the statutory time period . . . and
 (3) The statute incorporates by reference another statute that contains automatic approval or consent to extension language, thereby creating an express CT Page 3979 administrative linkage to the mandatory requirement." Id. pp. 273-274.
In the Special Defense, the defendants allege three grounds for their position that the permit must be granted by operation of law:
(1) The Commissioner failed to render a decision within 120 days of July 15, 12988 [1988], the date the application was complete.
(2) The Commissioner ignored a directive in a decision of the Commissioner granting a one year permit that the proceedings on any reapplication be expedited.
(3) The Commissioner failed to render a decision within 120 days of "the close of the hearing."
As to the first two reasons set forth in Caron, the court agrees with the plaintiff Commissioner that the Diversion Act contains no time limits for rendering a decision within a specified number of days after an application is "complete" and there is no mention in the act of time limits contained in decisions rendered by the Commissioner. Thus, under Caron as a matter of law these two stated reasons do not support a finding that the permit here must be granted by operation of law.
As to the third reason, Dept. of Utilities v. Carothers,28 Conn. App. 674 (1992) seems to be controlling. Section 22a-373
C.G.S.A. says the following in relevant part:
 "(a) The Commissioner shall, within one hundred and twenty days of the close of the hearing, make a decision either granting or denying the application as deemed complete in section 22a-371 . . .
. . . .
 (d) If a decision is not made in the time required pursuant to subsection (a) of this section, the application shall be deemed granted."
The plaintiff submitted a supplementary memorandum dated December 14, 1994 in which it is said that a decision was rendered by the agency on October 17, 1994 and argument before CT Page 3980 the Commissioner was scheduled for January 9, 1995. Groton does hold that the 120 day period begins to run at the "close of argument" id. page 682. Therefore, accepting these facts, Groton
would seem to bar this special defense.
However, the plaintiff's allegations make the motion to strike a so-called "speaking demurrer." Even though the Third Special Defense would not be viable if the allegations made were true, I cannot take into account allegations outside the pleadings in ruling on the motion to strike. I will deny the motion to strike directed to the Third Special Defense.[2]
Fourth Special Defense:Exhaustion of Administrative Remedies.
The defendants have raised this argument on a Motion to Dismiss. They claim the Commissioner cannot bring this action because he has failed to exhaust administrative remedies. The court has denied the motion; for the reasons stated in an accompanying memorandum of decision to that motion, it will grant the motion to strike this Special Defense.
4.
Fifth Special Defense:Estoppel.
The discussion on laches is relevant to the estoppel claim. The doctrines are closely related and for purposes of this case the laches defense can be considered a sub-category of the estoppel claim, cf. Dupuis v. Submarine Bases Credit Union,170 Conn. 344, 353 (1976). Several of the cases cited in the discussion on laches cite estoppel cases interchangeably. AsDupuis recognized an estoppel claim is not permitted against a governmental agency in most circumstances, however, that case recognized such a claim would be permitted where action detrimental to a party has been induced by the agency, id. page 353. The Special Defense does not allege that the defendants were "induced" to continue their diversion of water and discharge activities by any action of the agency. They simply allege they were denied a permit to engage in these activities by the Commissioner's inactivity. There is not even a claim here that the Commissioner induced them to believe they could conduct their operations without a permit or that they were misled by actions of the agency into thinking such operations could be conducted. CT Page 3981Kimberly-Clark Corp. v. Dubno, 204 Conn. 137 (1987) refines theDupuis holding and says estoppel against a public agency can be invoked but, then goes on to say that the defense can be relied upon:
 "(1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency," id. p. 148 (emphasis added).
Requirement (3) is not meant to be some floating catchall allowing Superior Court judges to allow estoppel defenses when an agency, as here, is accused of merely delaying action on a permit application. There is still a need to allege inducement underKimberly-Clark. This is reflected by the court's use of the word "and" connecting the second and third requirements. Also the immediately following sentence which qualifies all three requirements for permitting an estoppel defense makes clear such a defense is not appropriate given the allegations made in this Special defense. The court at p. 148 says: "as noted this exception applies where the party claiming estoppel would be subjected to substantial loss if the public agency were permitted to negate the acts of its agents." Thus the allegation of inducement is still necessary. The defendants would be hard put to make any such allegation where their claim appears to be that the agency's failure to act on their permit application and not any indication by the agency that a permit would not be needed placed them in the posture of defendants resisting an agency action for injunction and penalties. In an action based on allegations that they engaged in activities certainly not sanctioned by the agency, either directly or indirectly, where is the inducement? The motion to strike the Fifth Special Defense is granted.
5.
Sixth Special Defense:Prior Pending Action/Standing.
 (a)
The prior pending action doctrine has been set forth inHalpern v. Board of Education, 196 Conn. 647 (1985). There the CT Page 3982 court said,
 "The pendency of a prior suit of the same character between the same parties brought to obtain the same end or object, is, at common law, good cause for, abatement. It is so, because there cannot be any reason or necessity for bringing the second, and, therefore, it must be oppressive and vexatious," id. p. 652.
In the Sixth Special Defense the defendants claim the plaintiff cannot sue for violation of the wetlands laws. They claim the Town of Brookfield Wetlands Commission has issued cease and desist orders to the defendants "in order to address the same concerns raised by DEP" in Count 10 (wetlands claim). They allege in their special defense that the Town is holding hearings on these concerns: "Accordingly those hearings constitute a prior pending action to the one initiated by the DEP'S complaint in this action," (Par. 14 of Special Defense).
This doctrine is somewhat elusive and in some of the language of the cases there seems to be a suggestion that whether to grant such a defense may be discretionary: "The rule forbidding the second action is not however one of unbending rigor nor of universal application, nor a principle of absolute law," Farley-HarveyCo. v. Madden, 105 Conn. 679, 682 (1927), (whatever that means).
The plaintiff notes that the purposes of the two proceedings are different; the defendants seek a permit to conduct regulated acturty in a wetland before to Town Wetland Commission. Here an injunction and penalties are sought. It is true that "the fact that different relief is sought does not prevent (dismissal) of a second action adjudicating the same underlying rights." Stephenson, Vol. 1, Conn. Civ. Proc. (2d ed) § 104b, p. 423. However, in this action there is a demand for penalties under § 22-44(b) of the general statutes which raises different issues and seeks an entirely different remedy than anything that will be determined or sought in the hearings before the Wetland's Commission.
What is of even more concern to the court is that for the rule to apply there must be "strict identity of the parties,"Conti v. Murphy, 23 Conn. App. 174, 179 (1990). Conti cites a Florida case. There the court said: CT Page 3983
 "In order for a cause of action to be abated because of an action already pending, the identity of the parties must be exact because the court is necessarily projecting the effect of a case which has not been tried and a judgment which has not yet been rendered." Burns v. Ghubbs Construction, Inc., 174 So.2d 476, 478 (Fla., 1965).
There is no identity of parties here so that the prior pending action does not apply as a matter of law. In effect two different "sovereigns" are pursuing separate remedies in two different forums. How can one party's action be stricken or abated on the basis that another party is pursuing a remedy involving the same underlying issues? There is nothing oppressive or vexatious about allowing these two actions to proceed. In fact, Section 22a-44(b) contemplates the possibility of parallel actions before the Town Commission and an action brought by the state.
(b)
The defendants also claim the plaintiff commissioner has no "standing" to bring this action. Interestingly, although they raise this argument in their Special Defense, the defendants did not brief it.
The claim as to standing is that § 22a-39 of the General Statutes states the Commissioner shall exercise "general supervision" of the administration and enforcement of the so-called Inland Wetlands and Watercourse Act but does not authorize the DEP to institute suit pursuant to section 22a-42a(c). But the latter act provides no one may engage in regulated activity without the required permit. Where there is an alleged violation of the act Section 22a-44(b) clearly and explicitly authorizes the Commissioner to bring the type of action now before the court.
The Sixth Special Defense is stricken.
6.
Seventh Special Defense:Innocent Landowner.
CT Page 3984
This special defense is based on the so-called "Innocent Landowner Defense," § 22a-452d C.G.S.A. et seq. Section22a-452(e) states that" "An innocent landowner holding or acquiring an interest in real estate that has been subjected to a spill or discharge shall not be liable, except through imposition of a lien against that real estate under Section 22a-452(a), for any assessment fine or other costs imposed by the state for the containment, removal or mitigation of such spill or discharge . . ."
For the purposes of this case "innocent landowner" is defined in § 22a-452(d)(B) as "a person who acquires an interest in real estate, other than a security interest after the date of a spill or discharge as the result of actions taken before the acquisition, and, at the time of the acquisition, the person (i) does not know and has no reason to know of the spill or discharge, and inquires, consistent with good commercial or customary practices, into the previous uses of the property . . ."
The Seventh Special Defense is aimed at the eleventh and twelfth counts of the complaint. The Special Defense alleges that the defendants meet the definition of "innocent landowner." It states any ownership interest was acquired "after the date of spill or discharge (par. 4); moreover the defendants were "not otherwise liable for the spill or discharge as the result of actions taken before" the defendants' acquisition, (par. 5) and for good measure the defendants "exercised due diligence in their inquiries into the previous uses of the property, and those inquiries were consistent with good commercial or customary practices: (par. 6). Despite these inquiries the defendants had no reason to know and in fact did not know of the spill or discharge of which the plaintiff complains in this action (par. 7). Thus, the defendants meet the definition of "innocent landowner" and "are immune from liability for any alleged discharge claimed in counts XI and XII" of the complaint.
As the plaintiff points out, however, it seems apparent that the "innocent landowner" defense is not relevant to any allegation or claim made in the complaint. Paragraph 112 of the eleventh counts reads as follows:
 "112. Since January 1987, all the defendants have, during the time they owned and/or operated the mine, been discharging materials into the waters of CT Page 3985 the State at the mine site.
Paragraph 116 of the twelfth count reads:
 "116. Since January 1987, all the defendants have, during the time they owned and/or operated the mine, caused pollution of the waters of the State."
The complaint as framed does not seek to hold these defendants liable for discharges or pollution that occurred before the acquisition of their interest in the mine.
Paragraph 4 of the Special Defense makes a passing reference to the ". . defendants' adamant contention that none of them have ever individually or personally obtained a direct interest in the subject mine or quarry . ." What an "indirect" interest could be and whether any such interest could subject the defendants to liability under the act is unclear, at least to the court, but this language is a simple denial of allegations made in the complaint and has nothing to do with any so-called "innocent landowner" defense.
The allegations of the complaint and the position taken by the plaintiff in pages 14-15 of its July 26, 1994 memorandum frame the issue between the parties on the claims made in these counts in such a way that the date of acquisition by these defendants of an interest in the mine will be a subject of dispute, determinative of the liability of the plaintiff's claims. That being the case, coupled with the fact that the plaintiff concedes that these counts are based on allegations of spills or discharges occurring after the date of acquisition, make any "innocent landowner" defense irrelevant. The defendants make no claim that the words "acquires and interest in real estate" as used in § 22a-452d(B) has any meaning different from the ordinary meaning of that term — an issue which is and can be raised by the defendants' general denial of having obtained an interest in the mine.
Therefore, the Seventh Special Defense is stricken.
Conclusion
The court strikes the Second, Fourth, Fifth, Sixth and Seventh Special Defenses. It does not strike the Fourth Special Defense. CT Page 3986
Corradino, J.