[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from the decision of the Planning and Zoning Commission of the Town of Lebanon (hereinafter the Commission) granting the application of Marty Gilman, Inc. (hereinafter Gilman) for a change of zone. CT Page 466
For reasons hereinafter stated, the decision of the Commission to grant the application is affirmed.
This action was originally brought by the named plaintiff Arlene Goyette, together with plaintiffs Adele Sanger and Cathy R. Morton. Subsequently, on August 13, 1997, Cathy R. Morton withdrew as a plaintiff.
General Statutes § 8-8(b) limits appeals such as the present action to persons who are aggrieved by the decision appealed from. Pleading and proof of aggrievement are essential to establish subject matter jurisdiction over an appeal under § 8-8(b). Hughes v. Town Planning Zoning Commission,158 Conn. 505, 507 (1968).
The record indicates that the issues of standing and aggrievement of the plaintiffs were raised by Gilman's motion to dismiss on May 28, 1997. On September 9, 1997, the Court (Koletsky, J.) granted the motion except as to Adele Sanger. Gilman again moved to dismiss on October 3, 1997, alleging lack of aggrievement and standing. By Memorandum of Decision filed July 22, 1998, the Court (Hurley, J.) denied the motion.
At the time of trial, defendant Gilman again requested consideration of these issues. Section 8-8(J) provides that any time after the return date any defendant may move to dismiss the appeal where it is claimed that a plaintiff lacks standing. The burden is then placed on plaintiff to prove standing. Subsection (j) then provides that the Court's order on the motion may be appealed in the manner provided in subsection (o) of § 8-8. Subsection (o) provides that there shall be no right to further review except to the Appellate Court by certification.
Accordingly, the question of aggrievement having been decided, the issue will not again be reconsidered.
The record indicates that on February 3, 1997, Gilman filed an application for a change of zone for a 22.73 acre tract in Lebanon, owned by Fay Schwartz, from RA Residential/Agricultural to Light Industry in accordance with § 11-1 of the Zoning Regulations.
The property is bounded by Scott Hill Road, Standish Road, Route 2 and the Bozrah town line. Gilman had an agreement to purchase this property from Schwartz. CT Page 467
On April 2, 1997, a public hearing was held at which those in favor of the application, as well as those opposed, were heard by the Commission. At a regular meeting held April 9, 1997, the Commission voted to approve the application and this appeal ensued.
In deciding the issues presented by the appeal, the Court is limited in its scope of review by statute and applicable case law. Review of the decisions of local zoning authorities is limited to a determination, principally on the record before the Commission, whether the Commission abused the discretion vested in it. Tazza v. Planning Zoning Commission, 164 Conn. 187, 191
(1972). This Court can sustain the appeal only upon determination that the action taken by the Commission was unreasonable, arbitrary and illegal; it must not substitute its judgment for that of the local Commission and must not disturb the decision of the Commission as long as honest judgment has been reasonably and fairly exercised. Baron v. Planning Zoning Commission,22 Conn. App. 255, 257 (1990). Conclusions reached by the Commission must be upheld by the Court if they are reasonable supported by the record. Primerica v. Planning Zoning Commission, 211 Conn. 85,96 (1989). The question on review of the Commission's action is not whether the court would have reached the same conclusion but whether the record before the Commission supports the decision reached. Id.
Although the factual and discretionary determinations of the Commission must be given considerable weight, it is for the Court to expound and apply governing principals of law. DomesticViolence Services of Greater New Haven, Inc. v. FOIC,47 Conn. App. 466, 470 (1998).
Plaintiff has raised a number of issues, each of which must be considered by the Court.
It is claimed by plaintiff that the Commission failed to comply with General Statutes § 8-3(a) which requires that a copy of any proposed zone change be filed in the office of the town clerk for public inspection at least ten days before the date of the public hearing on the application. Compliance with the filing and notice requirements of § 8-3(a) are a prerequisite to valid action by the Commission. Failure to give proper notice constitutes a jurisdictional defect rendering any action taken on the application void. Timber Trails CorporationCT Page 468v. Planning Zoning Commission, 222 Conn. 374, 375 (1992). Whenever a lack of jurisdiction appears on the record, the Court must consider the question and fully resolve the issue before proceeding further with the case. Valley Cable Vision, Inc. v.Public Utilities Commission, 175 Conn. 30, 32 (1978).
Exhibit 1 of the return of record is a copy of the public notice scheduled for April 2, 1997. At the bottom of the exhibit is a stamp with the word "Received" and the date "3-17-97" written in. The stamp also contains the words "Lebanon, CT Town Clerk" and appears to be signed by an assistant in that office. The file also contains a copy of the same legal notice of the April 2, 1997 public hearing with a certification by the town clerk that it was a true copy of the legal notice received by that office on March 17, 1997.
These documents in the record support a conclusion that a copy of the notice of public hearing in the proposed zoning change scheduled for April 2, 1997 was, in fact, filed with the town clerk within the prescribed time in accordance with the statute. Scovil v. Planning Zoning Commission, 155 Conn. 12, 17
(1967). Where there is no substantial evidence to the contrary, it must be concluded that plaintiff has failed in her burden of proof that the notice of the public hearing was not filed for public inspection as required by § 8-3(a). Public officials are presumed to have done their duty until the contrary appears.Leib v. Board of Examiners for Nursing, 177 Conn. 78, 84 (1979).
Plaintiff also contends that the Commission erred in allowing additional evidence to be submitted to it after the close of the public hearing.
The record indicates that after hearing all interested parties the public hearing of April 2, 1997 was formally closed by the Commission's Chairman Harold Liebman who announced that once the hearing was closed no other comments or testimony could be received by the Commission.
The record also indicates that on April 7, 1997, the Commission conducted a site walk on the premises involved in the zone change accompanied by Albert G. Bisacky, P.E. managing engineer of Pare Engineering. Subsequently, Bisacky submitted a report to the Commission dated April 9, 1997. The report indicated that at the request of the Commission, Pare reviewed a preliminary site plan in support of the zone change and CT Page 469 participated in the site walk.
The report opines that the site would be well suited to the proposed manufacturing facility which would necessitate the zone change. The report then listed five specific reasons for the conclusion.
The minutes of the Commission's April 9, 1997, meeting indicate that the report of Pare Engineering was considered by the Commission as a part of its deliberations prior to approving the zone change.
In Pizzola v. Planning Zoning Commission, 167 Conn. 202,207-208 (1974), the Supreme Court considered the legal effect of information being submitted to a planning and zoning commission on a matter under consideration after the close of a public hearing. The court stated the general rule that "(w)hile proceedings before zoning and planning boards and commissions are informal and are conducted without regard to the strict rules of evidence, nevertheless, they cannot be so conducted as to violate the fundamental rules of natural justice. Due process of law requires that the parties involved have an opportunity to know the facts on which the commission is asked to act, to cross examine witnesses and to offer rebuttal evidence. The commission could not properly consider additional evidence submitted by an applicant after the public hearing without providing the necessary safeguards guaranteed to the opponents of the application and to the public. This means a fair opportunity to cross examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. Not to do so would deny those opposing the application the right to be fully apprised of the facts on which the board is asked to act." (Citations omitted.)
Although the Commission must follow the law, as stated inPizzola, a planning and zoning commission composed of laymen is entitled to technical and professional assistance regarding matters beyond its expertise. This entitlement is necessarily implied in the legislation creating the commission and setting forth its duties. Spero v. Zoning Board of Appeals,217 Conn. 435, 444 (1991). This information may be received by a local administrative agency, such as the Commission from its own technical or professional experts outside the confines of the administrative hearing following the public hearing. Narooz v.Inland Wetland Agency, 26 Conn. App. 564, 573-574 (1992). CT Page 470
The record here indicates that the Commission retained the services of Pare Engineering to provide the technical and professional assistance which it did not possess. The preliminary site plan reviewed by Pare was relevant to the zone change since it had been submitted as a part of Gilman's application and was available for comment at the public hearing.
The Commission was entitled to have its engineer review the site plan and provide technical assistance concerning the suitability of the area in question for a change to a Light Industrial Zone. The situation is quite different from that found in Pizzola v. Planning Zoning Commission, supra, 167 Conn. 208, where the ex parte information was supplied by a party to the controversy, and in Frito-Lay, Inc. v. Planning ZoningCommission, 206 Conn. 554 (1988), where the general public was allowed to comment after the close of the public hearing.
It cannot be found that the Commission received information relative to the zone change improperly after the close of the public hearing in violation of the law as claimed. There was no showing of substantial prejudice resulting from the information properly received in the Pare report.
As noted, in connection with the last issue on April 7, 1997, the Commission conducted a site walk. This was after the close of the public hearing and there was no mention of it at the public hearing. Plaintiff contends that the Commission failed to properly notice this site walk and there is no record of the event. This, however, does not appear to be the case.
A review of the minutes of the Commission's meeting of April 2, 1997, show that the public hearing was called to order at 7:30 p. m. and that the first matter considered was the public hearing on Gilman's application. The public hearing was closed at 9:40 p. m. After the public hearing, the minutes indicate that the Commission discussed the proposed zone change. Two issues discussed were, concern about spot zoning and the necessity for a site walk. The minutes indicate the following action:
"It was the consensus of the Commission that we get a legal opinion on spot zoning and schedule a site walk for Monday, April 7, 1997, at 4:30.
The record further discloses that the Commission complied CT Page 471 with General Statutes § 1-21, by filing with the town clerk on April 3, 1997, a notice of a special meeting to be held April 7, 1997, at 4:30 p. m. The notice informed the public that the meeting would take place on the property of Fay Schwartz. From the notice, it could be easily discerned that the meeting would consist of a site walk in connection with the Gilman application.
A copy of the minutes of this special meeting was duly filed with the Commission's office indicating who was present and what happened.
There is no evidence to indicate that the notice or the minutes were falsified, and although plaintiff indicates a lack of actual knowledge of the time and place of the site walk it was discussed at the open meeting on April 2, 1997, and the posting of the notice on April 3, 1997, was constructive notice
There is nothing to indicate, other than that the site walk was undertaken, to allow the Commission and its technical advisor to more thoroughly evaluate the property which was the subject of Gilman's application. This was not an integral part of the hearing process requiring special notice to plaintiff or the public.
Plaintiff has failed to establish that the site walk was improper or in violation of the law. Grimes v. ConservationCommission, 243 Conn. 266 (1997).
It is also claimed by plaintiff that the Commission improperly predetermined the outcome of the application in advance of the public hearing. The genesis of this claim is a letter signed by the chairman of the Commission and dated February 6, 1997. This was after Gilman's application had been filed but before the public hearing. The letter was sent to the town attorney asking her to review a "proposed schedule pertaining to the Gilman Zone Change." Item 4 on the proposed schedule included with the letter was as follows:
"4. We should hold the public hearing on 4/2/97, special meeting, and approve the zone change then, so that the final site plan can be received at the 4/9/97 regular meeting. (8-7d(c))."
Plaintiff argues that the letter was more than the submission of a proposed schedule of a complicated matter to the attorney for review. It is claimed that the letter is evidence that the CT Page 472 Commission had already decided to approve the application.
It is argued that the chairman's choice of language is most important. In paragraph 4, the words "and approve the zone change," it is claimed, indicate that the chairman was not simply setting a timetable. If that were the case, more noncommittal language would have been used.
Plaintiff also points out that there was no need to accelerate the processing of the application by the use of a special meeting. By doing so, it is argued that the Commission was accommodating some urgency on the part of Gilman.
Lastly, plaintiff implies that a conversation between the chairman and Gilman could be implied from the schedule as a whole and the scheduling of a site plan review.
No claim is made that any member of the Commission had a financial or other relationship with Gilman, but that the letter with the schedule was a clear instance of the existence of the appearance of impropriety.
General Statutes § 8-11 prohibits any member of a planning and zoning commission from participating in any hearing or decision of the Commission of which he or she is a member upon any matter in which such member is directly or indirectly interested in a personal sense. "A personal interest is either an interest in the subject matter or a relationship with the parties before the zoning authority impairing the impartiality expected to characterize each member of the zoning authority. A personal interest can take the form of favoritism toward one party or hostility toward the opposing party; it is a personal bias or prejudice which imperils the open-mindedness and sense of fairness which a zoning official in our state is required to possess." Anderson v. Zoning Commission, 157 Conn. 285, 290-291
(1968).
"(T)he law does not require that members of zoning commissions must have no opinion concerning the proper development of their communities. It would be strange, indeed, if this were true." As the court noted in In Re J.P. Linahan, Inc.,138 F.2d 650, 651-52 (2d Cir. 1943), "(t)he human mind . . . is no blank piece of paper. . . . Interests, points of view, preferences, are the essence of living. . . . An `open mind,' in the sense of a mind containing no preconceptions whatever, CT Page 473 would be a mind incapable of learning anything, [and] would be that of an utterly emotionless human being. . . ." Cioffolettiv. Planning Zoning Commission, 209 Conn. 544, 555 (1989) (citations omitted). Id.
Local governments, therefore, would be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require the disqualification of a zoning official. Such a policy "would not only discourage but might even prevent capable men and women from serving as members of the various zoning authorities. Of course, courts should scrutinize the circumstances with great care and should condemn anything which indicates the likelihood of corruption or favoritism." Id.
"(T)here is a presumption [however], that administrative board members acting in an adjudicative capacity are not biased. To overcome the presumption, the plaintiff . . . must demonstrate actual bias, rather than mere potential bias, of the board members challenged, unless the circumstances indicate a probability of such bias too high to be constitutionally tolerable. The plaintiff has the burden of establishing a disqualifying interest." O G Industries, Inc. v. Planning Zoning Commission, 232 Conn. 419, 429-430 (1995) (citations omitted).
Although the letter with enclosure submitted to the Commission's attorney is capable of being interpreted to show the existence of impropriety it cannot be found that plaintiff has established a disqualifying interest. It is more likely than not the letter was simply a request for the attorney to review a proposed schedule of what the Commission considered a complicated matter in which an unfortunate choice of words was used.
Those factors which mitigate against the conclusion urged by plaintiff include the conduct of the public hearing in which all parties, including those opposed to the zone change, were given ample opportunity to participate with no showing of bias by the chairman or any member of the Commission. Also, after the public hearing the Commission was so concerned about the spot zoning issue that the town attorney's opinion was sought. This is reflected by the minutes of the April 9, 1997 meeting which stated, "There were some questions that needed to be looked into before the Commission could make a decision on this zone change." The fact that after the public hearing the Commission felt it necessary to personally investigate the property by a site walk CT Page 474 is further evidence that the decision had not been predetermined.
Plaintiff also claims that the decision of the Commission was in error because the zone change did not conform to the comprehensive plan of the Town of Lebanon and that it is spot zoning. As a part of this claim, plaintiff argues that the decision is not consistent with the powers granted to the Commission under General Statutes § 8-2.
In considering these issues, the Court is mindfull that a zoning commission, when amending zoning regulations, acts in a legislative capacity, and in so doing, it has broad discretion and the Court on appeal should not substitute its judgment for that of the commission unless the appellants prove that the commission's action was clearly arbitrary or illegal. Burnham v.Planning Zoning Commission, 189 Conn. 261, 266 (1983). A zoning commission has broad discretion when it acts within its prescribed legislative powers. First Hartford Realty Corporationv. Planning Zoning Commission, 165 Conn. 533, 540 (1973). The question on appeal is not whether the court would have reached the same conclusion as the agency, but whether the record before the Commission supports the decision reached. Burnham v. Planning Zoning Commission, supra, 189 Conn. 265.
The courts allow zoning authorities this discretion in determining the public need and the means of meeting it because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. Burnham, id. The Commission's authority to amend its regulations is not unfettered. In considering amendments, it must follow the law.Woodford v. Zoning Commission, 147 Conn. 30, 32 (1959).
General Statutes § 8-3 specifically governs the establishment and changing of zoning districts. This section sets up the technical requirements for zone changes, which appear to have been complied with, and requires that when any change in zone is made, the Commission must state upon the record the reason why such change is made. Section 8-3a(a) requires the Commission to state on the record its findings on consistency of any change in boundary with the plan of development of the municipality.
Although the minutes of the April 9, 1997 meeting reflect general agreement by members of the Commission on certain subordinate matters, the specific findings made by the Commission CT Page 475 in compliance with § 8-3 and § 8-3a(a) were that "the change in zone would be a benefit to the community and it would be in harmony with the current and proposed plan of development."
At the outset, it is noted that plaintiff refers to the comprehensive plan. The comprehensive plan is a general plan to control and direct the use and development of property in a municipality or large part of it by dividing it into districts according to the present and potential use of the properties.First Hartford Realty Corporation v. Planning and ZoningCommission, 165 Conn. 533, 541 (1973). The comprehensive plan is found in the scheme of the zoning regulations themselves and the zoning map established pursuant to those regulations. Burnham v.Planning Zoning Commission, supra, 189 Conn. 267.
The Commission, by its minutes, reflects consideration of the plan of development. The plan of development is not the same as the comprehensive plan. The plan of development is prepared by the Commission in its planning capacity under the provisions of General Statutes § 8-23. It is a plan containing recommendations for future development of the municipality and is advisory only as to the zoning decisions of the Commission. FirstHartford Realty Corporation v. Planning and Zoning Commission, supra, 542.
As previously noted, § 8-2 mentions the plan of development. Burnham v. Planning and Zoning Commission, id., referring to § 8-2, mentions the implicit requirement that the change in zone be in harmony with the comprehensive plan. This problem may be moot here since the document referred to by both the Commission and the plaintiff is entitled "A Comprehensive Plan of Development for the Town of Lebanon, Connecticut." This plan was published in 1965.
Plaintiff points out that the town as described in the plan is not significantly different as it exists at the present time. There is very little commercial development in the town and the area of the zone change is made up only of residential and agricultural properties.
The comprehensive plan of development states that the town was "devoid of industry." The only industry mentioned in the plan was a small machine shop and two locations where earth operations existed. According to the plan, with one exception not germane to the present case, Lebanon was surrounded by land predominantly CT Page 476 zoned for medium or low density residential use.
In its proposal for future land use the plan mentioned that there was not much incentive to bring any industry into the town. The area of the town serviced by the Central Vermont Railroad and land along the town line with Franklin were mentioned as possible future industrial sites. The document also states that the area between the present and proposed relocated Route 2 could be used for industry "to take advantage of these roads."
At the time the plan was prepared in 1965, Route 2 as a major highway was only in the planning stage. In its conclusions concerning future industry, the plan recognized that this highway would be the only truck route through the town and that access to it would be the most important factor in the location of industry "ideally within one-quarter mile of an interchange." The plan recommended an aggressive industrial committee to help attract industry to the area.
At the time of the hearing on Gilman's application, Route 2 was a modern four-lane divided highway with an access ramp adjoining the area of the proposed zone change. The minutes of the April 9, 1997 meeting indicate that the Commission took this into consideration in finding that the zone change would be in conformance with the plan of development.
At the time of the public hearing, the plan of development was being updated and members of the committee assigned to this task spoke in favor of the zone change. Although it could be considered premature, this testimony apparently was the basis for the Commission's conclusion that the zone change would be in conformance with the proposed plan of development. This conclusion was not unreasonable.
Concerning the planning aspect of this decision, plaintiff points out that the Southeastern Connecticut Council of Governments Regional Planning Commission recommended against the proposed zone change. The council noted that the proposed change would be inconsistent with the Regional Plan of Development and would be incompatible with abutting land in Bozrah zoned residential. This recommendation was not binding on the Commission and it is significant that the Bozrah Planning and Zoning Commission did not specifically recommend against the zone change. The Bozrah Commission pointed out the possibility of nuisances for the abutting property and encouraged the Commission CT Page 477 to require an adequate buffer between the proposed industrial activity and the residential property. In reviewing the plan sent to the Bozrah Commission, that Commission commented that the "present wetlands and surrounding area on site could accomplish this by being required to remain in its natural state."
The report of Pare Engineering, which the Commission considered before approving the zone change, address as the buffer problem and states:
 A wetland of significant extent separates the subject parcel from residentially developed property to the west in the Town of Bozrah. Residential property in Lebanon lies on the opposite side of Scott Hill Road and Standish Road; therefore, visual and/or noise related impacts to residential properties in the vicinity should be minimal.
The Pare report also states that the immediate access of the area of the zone change to Route 2 would result in minimal travel on local roads, a concern of the Southeastern Connecticut Council.
There was also testimony on these points and that the zone change would be in the best interests of the town at the public hearing.
The duties of the Commission with respect to the comprehensive plan are generally satisfied when the zoning authority acts with the intentions of promoting the best interests of the entire community. First Hartford RealtyCorporation v. Planning and Zoning Commission, supra,165 Conn. 541.
Plaintiff criticizes the zone change because the area rezoned would be surrounded by residential property. It may well be that such properties are now devoted to residential uses. Under the zoning regulations, however, such properties in Lebanon are not in any pristine residential zone. Section 4.2 of the zoning regulation covers those uses allowed in the RA Rural Agricultural Residence District as a matter of right and by special permit. In addition to residential uses, certain agriculture uses are permitted by right. These agricultural uses include dairies, truck gardening and with limitation poultry farming. By special permit, aircraft landing fields, town refuse areas and sewage treatment plants, as well as other uses, may be allowed in the CT Page 478 zone.
These permitted uses could be more disruptive to the quiet enjoyment of residential property than light industry.
Considering all of the evidence in the record, it cannot be found that the Commission abused its discretion in finding that the zone change was in accordance with the plan of development. There is also substantial evidence in the record to support a finding that the zone change was in accordance with the comprehensive plan, although this was not specifically identified as such by the Commission.
In addition to the requirement that a zone change be in accordance with the comprehensive plan, it is also required that the change be reasonably related to the police power purposes found in General Statutes § 8-2. First Hartford RealtyCorporation v. Planning and Zoning Commission, id. Plaintiff argues that the change of zone is not consistent with the enabling legislation as contained in § 8-2 in that placing an industrial zone in the midst of residences does not promote the health, safety and welfare of the residents. It is also argued that the Commission considered possible economic benefits to the town which could result from the zone change and that this was improper.
It is fundamental that zoning legislation is a valid exercise of the police power. Town of Westport v. Kellems Company,15 Conn. Sup. 485, 489 (1948). The conditions imposed by § 8-2
that zoning regulations protect the public health, safety, convenience and property values must always be present for the right to zone rests on the reasonable exercise of the police power in the public interest. Summ v. Zoning Commission,150 Conn. 79, 91 (1962). The requirements of § 8-2 do not deprive the Commission of all discretion, nor do they mitigate against a change in a general zoning classification so long as the change approved is reasonable and serves the interest of the general community. Spada v. Planing and Zoning Commission, 159 Conn. 192,197 (1970).
Here, there was substantial evidence in the record that the change in zone was in accordance with the comprehensive plan and that adequate buffer areas would protect surrounding residential zones. The close proximity to the access ramp of Route 2, a modern four-lane highway, rendered the area in question CT Page 479 appropriate for industrial use. Considering these factors and others in the record, it must be concluded that the Commission's finding that the zone change would be a benefit to the community is supported by the record.
In determining claims of error in such matters, courts must be scrupulous not to hamper the legitimate activities of a civic administrative board by indulging in a microscopic search for technical infirmities in their actions. Connecticut ResourcesRecovery Authority v. Planning and Zoning Commission,225 Conn. 731, 751 (1993).
Considering the facts, as contained in the record before the Commission and the applicable law, it cannot be found that the Commission exceeded or violated the authority granted under §8-2.
Plaintiff also claims that the zone change was illegal because it was spot zoning. Spot zoning was also a concern of the Commission causing it to contact its attorney for advice.
Courts here consistently invalidate zoning decisions that have constituted spot zoning. Spot zoning is the reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood. Michel v. Planning ZoningCommission, 28 Conn. App. 314, 319, cert. denied 223 Conn. 923
(1992). Two elements must be satisfied before spot zoning can be said to exist. First, the zone change must concern a small area of land. Second, the change must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole. Id.
Here, it has been determined that substantial evidence exists in the record to support the conclusion that the zone change was in accordance with the comprehensive plan as well as the plan of development. The area involved in the zone change was 22.73 acres. This does not appear to be such a small area as to require a finding of spot zoning. In Bartram v. Zoning Commission,136 Conn. 89 (1949), the rezoning of a single lot was not considered so small as to constitute spot zoning. In Michel v. Planning Zoning Commission, supra, the rezoning of a four-acre lot was not considered spot zoning. Adherence to the comprehensive plan was the critical factor relied upon by the Court in the above cases for a determination that spot zoning did not exist. CT Page 480
Considering all of the issues raised by plaintiff in light of the discretion vested in the Commission by statute and the record before the Commission, it must be concluded that in granting the zone change requested, the Commission did not act illegally or in abuse of its discretion.
Accordingly, judgment is rendered in favor of the Commission affirming the decision granting the zone change.
Joseph J. Purtill Judge Trial Referee