FIRST HARTFORD REALTY CORPORATION *v.* PLAN AND ZONING COMMISSION OF THE TOWN OF BLOOMFIELD

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued October 16—decided December 14, 1973

*S. Frank D'Ercole,* for the appellant (defendant).

*Milton Sorokin,* with whom was *Alexander A. Goldfarb,* for the appellee (plaintiff).

BOGDANSKI, J. The defendant, the plan and zoning commission of the town of Bloomfield, acting on its own motion, changed the zone classification of a forty-acre parcel of land owned by the plaintiff, First Hartford Realty Corporation, from business B-2 to residence R-15. From this action First Hartford appealed to the Court of Common Pleas, which

sustained the appeal. From the judgment rendered thereon, the commission has appealed to this court and First Hartford has filed a cross appeal.

The commission, in its appeal, and First Hartford, in its cross appeal, have assigned error in the refusal by the court to find certain material facts claimed to be admitted or undisputed, and in the finding of various facts without evidence. Since they have not been briefed, all but two of these assignments are treated as abandoned. *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246; Maltbie, Conn. App. Proc. § 327. In the view that we take of this case, the two assignments of error which have been briefed are not material and we need not consider them. Practice Book § 628 (c); *Branford Sewer Authority* v. *Williams,* 159 Conn. 421, 425, 270 A.2d 546. The remaining assignments of error challenge the conclusions reached by the court and its rulings on claims of law.

This appeal concerns a forty-acre tract of land located at the southwest corner of Wintonbury Avenue and Blue Hills Avenue in the town of Bloomfield. On June 14, 1956, the commission approved the application of a prior owner for a change of zone of this property from R-15 residential to B-2 business in order to permit the development of a shopping center. Ownership of the property has changed twice since the zone change, and since 1961 the tract has been owned by First Hartford, which purchased it for $428,000. The projected shopping center, however, has never been built.

In January, 1965, the commission adopted a new plan of development for the town of Bloomfield. This plan, the subject of a public hearing on October

1, 1964, depicted the plaintiff's forty-acre tract as residential. The explanation given for this classification was that the new map was designed to reflect the actual use and not the official zoning status of the land, and depicted this land as residential because there was then no commercial structure on it. It was further explained that the plan of development did not contain updated commercial development policies for land such as First Hartford's and that the plan would be amended by a commercial study soon to be completed.

The expected commercial study was published in July, 1965. It concluded that land zoned for commercial use in Bloomfield was greatly in excess of need and recommended that First Hartford's forty-acre tract be rezoned to residential. The commercial study was never formally incorporated into the plan of development.

On November 18, 1965, the commission held a public hearing to consider some of the recommendations of the commercial study, including the rezoning of property of First Hartford. First Hartford filed a written protest and offered testimony and evidence in opposition to the change. At the hearing the attorney for First Hartford told the commission that its property was subject to a flood plain easement, a concededly erroneous statement. Because of this representation the commission sought and obtained additional information after the hearing regarding the existence of a flood plain easement. The commission also relied on a letter from the town assessor already in its files concerning the valuation of the parcel if zoned R-15. This letter had not been introduced at the public hearing.

On February 10, 1966, the commission changed the zoning classification of the land from B-2 business to R-15 residential for the following assigned reasons: "(1) [T]he original zone change was adopted as the result of a specific petition for a shopping center in 1956; since nine years have gone by since the zone change, the very condition for which the zone change was granted has changed. (2) The Commission now for the first time has a comprehensive Commercial Study, completed in the summer of 1965, designating the amount of land needed in commercial zoning in Bloomfield. This study recommends that this parcel of land be rezoned to a residential use. (3) There is now a church directly across the street from this location which did not exist in 1965. Immediately adjacent to this location is a school, the Wintonbury Elementary School, which did not exist. A convalescent home is being constructed in the area. In addition to Christ the King Church, two additional churches, one a synagogue, have been located in this area. These are major changes in land usage within the area. (4) Sewers were not available at the time of the original zone change. Metropolitan district sewers are now available for residential uses. (5) A major factor which was a strong part of the Commission's decision was the concern for the public safety due to increased traffic and the problems that are the ˙outgrow [sic] of this traffic on Blue Hills Avenue and on both Wintonbury Avenues. (6) A major shopping center located at this point is in direct conflict with the Regional Plan. Since 1956 the Wilson Shopping Center has been constructed and Bloomfield center has been enlarged. (7) The contour of this particular land under discussion is very nicely laid out for a subdivision. The Commis-

sion finds that there are no flowage easements covering this property and it is suitable for R-15 development. (8) This decision is in conformity with the Comprehensive Plan of the Town."

From this action First Hartford appealed to the Court of Common Pleas, which took additional evidence to supplement the record. The plaintiff was permitted to introduce evidence bearing on the issue of confiscation, the value of the land if zoned residential, and the danger of flooding, the level of the water table, drainage problems and soil conditions. First Hartford also challenged the action of the commission on the ground that it was improperly based upon the post-hearing evidence which First Hartford had not had the opportunity to rebut.

The court also heard evidence on the claim raised by the commission that the confiscation issue had been abandoned by stipulation of the parties. The court found the following facts: The original complaint, dated February 24, 1966, did include an allegation of confiscation. In March, 1966, the commission filed a "Motion to Erase for Want of Jurisdiction of the Subject Matter" alleging that the plaintiff had failed to sign the writ of summons. The parties thereafter entered into a stipulation on May 6, 1966, in which, the court found, the parties "agreed to waive all technical, procedural and other defects not germane to the issue of whether or not the Bloomfield Town Plan and Zoning Commission had sufficient grounds to effect a change of zone from Commercial to Residential." At the same time, with the consent of the commission, First Hartford filed a "Motion for a Substituted Complaint" and on May 9, 1966, amended its complaint, deleting, inter

alia, the allegation of confiscation. Five years later, however, First Hartford again amended its complaint and reinserted the allegation of confiscation.

The trial court concluded that the reception and use by the commission of the post-hearing evidence was illegal, but found that this illegality had been waived at trial by counsel for First Hartford; that the stipulation of May 6, 1966, had been "entered into for the purpose of obtaining a waiver of the defendant's claim of a jurisdictional defect in return and as consideration for deletion by the plaintiff of certain allegations from the complaint, including that of confiscation"; and that the zone change "was not confiscatory in that it did not deprive the plaintiff of the use of its property for any reasonable purpose." But the court nonetheless concluded that the rezoning "was not a reasonable regulation under the police power," was not justified by "any new or changed conditions," "was arbitrary, illegal and in abuse of its discretion," "was not in accord with the comprehensive plan" and had "no reasonable basis in the record."

In this court the commission contends that the trial court erred in concluding that the zone change could not be sustained on the record before it and that the reception of post-hearing evidence was illegal. In the cross appeal, First Hartford asserts that the court erred in concluding that the stipulation barred it from raising the issue of confiscation, that the zone change was not confiscatory and that it had waived the illegality of the reception of the post-hearing evidence.

The conclusions of the trial court as to the stipulation are tested by the finding. *Barnini* v. *Sun Oil Co.,* 161 Conn. 59, 63, 283 A.2d 217. The court's con-

clusion that by the terms of the stipulation of May 6, 1966, First Hartford agreed not to press its allegation of confiscation in exchange for the withdrawal by the commission of its claim of a procedural defect, is reasonably supported by the finding summarized above. Once a known right is waived, "the waiver cannot be withdrawn even if subsequent events prove the right waived to have been more valuable than had been anticipated." *Jenkins* v. *Indemnity Ins. Co. of North America,* 152 Conn. 249, 258–59, 205 A.2d 780. Since we agree with the trial court on the effect of the stipulation, we need not review its conclusion that the zone change was not confiscatory.

In rezoning the property in question, the commission acted as a legislative body. *DeMeo* v. *Zoning Commission,* 148 Conn. 68, 75, 167 A.2d 454; *Burke* v. *Board of Representatives,* 148 Conn. 33, 38, 166 A.2d 849. We have said on many occasions that courts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers. *Morningside Assn.* v. *Planning & Zoning Board,* 162 Conn. 154, 163, 292 A.2d 893; *Dooley* v. *Town Plan & Zoning Commission,* 154 Conn. 470, 478, 226 A.2d 509; *DeMeo* v. *Zoning Commission,* supra. "The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution." *Cameo Park Homes, Inc.* v. *Planning & Zoning Commission,* 150 Conn. 672, 677, 192 A.2d 886. Courts, therefore, must not disturb the decision of a zoning commission unless the party aggrieved by that decision

establishes that the commission acted arbitrarily or illegally. *Morningside Assn.* v. *Planning & Zoning Board,* supra; *Stiles* v. *Town Council,* 159 Conn. 212, 219, 268 A.2d 395; *Dooley* v. *Town Plan & Zoning Commission,* supra, 478–79; *DeMeo* v. *Zoning Commission,* supra.

The test of the action of the commission is two-fold: (1) The zone change must be in accord with a comprehensive plan, General Statutes § 8-2, *Summ* v. *Zoning Commission,* 150 Conn. 79, 87, 186 A.2d 160, and (2) it must be reasonably related to the normal police power purposes enumerated in § 8-2;[1] *Summ* v. *Zoning Commission,* supra, 91; see also "The Connecticut Law of Zoning," 41 Conn. B.J. 262, 272.

"A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties." *Summ* v. *Zoning Commission,* supra, 87. The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the entire community. *Morningside Assn.* v. *Planning & Zoning Board,* supra, 162.

The commercial study of 1965 recommended a retrenchment in zoning for commercial uses and

---

[1] Section 8-2 of the General Statutes states, in pertinent part, that zoning regulations "shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements."

specifically recommended that the plaintiff's land be rezoned. The study stated that the section of Bloomfield in which this property is located "is made up of a wide variety of uses, including a large part of the existing and proposed South Industrial Park, but it is essentially a residential area, and the problems of commercial development along Blue Hills Avenue cannot be separated from the problems of residential quality and deterioration." It is evident that the commission was concerned about the impact of further commercial development on the community. It is immaterial that the plan of development was never formally amended to incorporate the recommendation of the commercial study in accordance with General Statutes § 8-23. For the plan of development, properly called a "master plan" to distinguish it from the comprehensive plan zoning authorities are required to follow; *Mott's Realty Corporation* v. *Town Plan & Zoning Commission,* 152 Conn. 535, 538, 209 A.2d 179; is, in any event, merely advisory so far as zoning is concerned. *Faubel* v. *Zoning Commission,* 154 Conn. 202, 207, 224 A.2d 538. The comprehensive plan is to be found in the scheme of the zoning regulations themselves. *Stiles* v. *Town Council,* supra, 227; *Dooley* v. *Town Plan & Zoning Commission,* supra, 473.

First Hartford claims that its property was not rezoned in accordance with a comprehensive plan because the commission did not consider the suitability of the tract for residential development. Several of the reasons which the commission cited in support of the zone change bear on the propriety of the residential classification: the nearby presence of a school, a convalescent home, and three churches; the recent availability of sewers for residential use, and the good contour of the land for purposes of

a subdivision. Moreover, the commercial study pointed out the residential character of the locality and noted that much of the residential development there was relatively old and in the smallest residential lot zones. On this record we cannot say that the rezoning was not in harmony with a comprehensive plan which took into account the suitability of the plaintiff's property for residential development.

Nor can we agree with the trial court that the record does not show that the zone change was reasonably related to the proper purposes of the police power. Where a zoning authority has stated its reasons for a zone change, in accordance with General Statutes § 8-3, the reviewing court ought only to determine whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. *DeMaria* v. *Planning & Zoning Commission,* 159 Conn. 534, 540, 271 A.2d 105. The zone change must be sustained if even one of the stated reasons is sufficient to support it. *Zygmont* v. *Planning & Zoning Commission,* 152 Conn. 550, 553, 210 A.2d 172.

Among the reasons which the commission assigned were the need to cut back on the amount of land zoned for commercial use and "the concern for the public safety due to increased traffic." Where the zoning authority acts to limit the amount of commercial development in the best interests of the community as a whole and in accordance with a comprehensive plan, the requirement of § 8-2 that zoning regulations be designed to promote the general welfare, "with a view to . . . encouraging the most appropriate use of land" throughout the com-

munity, is satisfied. *Samp Mortar Lake Co.* v. *Town Plan & Zoning Commission,* 155 Conn. 310, 231 A.2d 649. Moreover, the commission's concern for public safety and traffic problems is amply supported by the record. There was evidence that the construction of a large regional shopping center on the plaintiff's forty-acre tract would result in a serious traffic overload on Blue Hills Avenue, an important arterial highway, and that this avenue was already "operating at double" its practical capacity. One of the proper purposes of zoning enumerated in § 8-2 is to "lessen congestion in the streets." We need not review the other reasons given by the commission, because we find that two of the assigned reasons were sufficiently supported by the record and are clearly within the purposes contemplated by § 8-2.

The commission also recited the existence of changed conditions to justify its action. First Hartford denies their existence and claims that the zone change cannot stand in their absence. A zoning authority must be free to modify its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. *Malafronte* v. *Planning & Zoning Board,* 155 Conn. 205, 209, 230 A.2d 606; *Pierrepont* v. *Zoning Commission,* 154 Conn. 463, 468–69, 226 A.2d 659. "A legislative body is not necessarily bound by the rule which prohibits administrative boards, such as a zoning board of appeals, from reversing earlier decisions without a change in circumstances. . . . The discretion of a legislative body, because of its constituted role as a formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function. Thus, although we have said that a zoning commission should not ordinarily alter

the classification of a certain area in the absence of changed conditions, it is clear that this rule, which is a restriction on the principle of legislative discretion, will only be applied in those rare instances where the zoning amendment is patently arbitrary. A less strict rule would require the court to exercise a legislative judgment." *Malafronte* v. *Planning & Zoning Board,* supra.

In summary, we conclude that the record reasonably supports the zone change in this case and that the action of the commission was not arbitrary, illegal, or an abuse of its discretion.

The remaining contentions raised in the cross appeal concern the propriety of the reception by the commission of post-hearing evidence and the trial court's conclusion that the plaintiff waived its right to challenge the use of that material. Even if the reception of the post-hearing evidence was illegal— a question we do not decide—it was at most harmless error because the action of the commission is adequately supported by assigned reasons not based on the allegedly tainted evidence. *Zygmont* v. *Planning & Zoning Commission,* supra. The subsequent evidence regarding flood problems was merely cumulative; moreover, its use was induced by the admittedly erroneous representation of the plaintiff's attorney. The letter of the town assessor regarding the value of the plaintiff's tract under the R-15 classification related to the issue of confiscation, which was stipulated out of the case.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the appeal.

In this opinion the other judges concurred.