[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this consolidated appeal, Joanne R. Stanley, Joseph Foster Lyons and Bridget M. Lyons (the Stanley plaintiffs); and, Sean Hart, Cyril Mullins and Holly Mullins-Hart (the Hart plaintiffs), appeal the enactment of a Design District regulation by the defendant, the Planning Zoning Commission of Trumbull (commission). Also named as a defendant is James Abriola.
The commission acted pursuant to General Statutes § 8-3. The plaintiffs appeal pursuant to General Statutes § 8-8.
The procedural history may be summarized as follows:
On June 29, 1995, the commission voted unanimously to adopt an amendment to the Trumbull Planning Zoning Regulations which created a Design District. (Return of Record [ROR], Item 12, Minutes of the Planning and Zoning Commission Meeting of June 29, 1995.) Legal notice of such amendment was published on July 12, 1995. (ROR, Item 14, Certificate of Publication of Legal Notice.) The Hart plaintiffs commenced their appeal from the Design District amendment by service of process on July 15, 1995. The Stanley plaintiffs commenced their appeal from the Design District amendment by service of process on July 18, 1995.
On August 16, 1995, James S. Abriola filed a motion to be made a party defendant pursuant to General Statutes § 52-102. On September 5, 1995, the court, Hauser, J., granted Abriola's motion to be made a party defendant. Thereafter, service of process was made upon Abriola.
On March 15, 1996, the commission filed the return of record together with a motion to consolidate the aforementioned appeals. On April 1, 1996, the court, Levin, J., granted the commission's motion to consolidate.
The Stanley plaintiffs filed an amended appeal dated March 11, 1997. The Hart plaintiffs filed an amended appeal dated March 12, 1997. On March 17, 1997, the commission filed answers to each amended appeal, and on March 18, 1997, Abriola filed answers to each amended appeal. All of the parties have filed briefs in support of their respective positions. This court held a hearing on February 25, 1997.
The following facts do not appear to be in dispute:
At an October 6, 1994, "work session," the commission decided CT Page 7604 to draft regulations creating a Design District to be located along White Plains Road in Trumbull, Connecticut. (ROR, Item 1, Minutes of Planning and Zoning Commission Meeting of October 6, 1994). At this work session, commissioner Halaby suggested that no more than two of any one professional use be permitted within the Design District. (ROR, Item 1.) The commission further discussed the nature of the Design District at regularly scheduled commission meetings on November 12, 1994, December 4, 1994 and February 15, 1995. (ROR, Items 2, 3 4). At the November 12, 1994 meeting, commissioner Halaby indicated that the Design District would prohibit subdivision, require landscaping to be upgraded, and require rear parking. (ROR, Item 2, Minutes of the Planning and Zoning Commission Meeting of November 16, 1994.) Commissioner Capasso recommended that the Design District be limited to certain types of professional offices, with only one such use in any one home. (ROR, Item 2.) Additionally, commissioner Capasso recommended that such homes be owner occupied and that special permits be required to operate a professional office therein. (ROR, Item 2.) At the December 14, 1994 meeting, funeral homes, doctors, accountants, engineers and real estate offices were proposed as Design District permitted uses. (ROR, Item 3, Minutes of the Planning and Zoning Commission of December 14, 1994.) At the February 15, 1995 meeting, the commission determined that Design District permitted uses would require a special permit, that funeral homes must have a minimum lot size of 4.5 acres, that no new construction would be permitted in the Design District, that the Design District businesses must be owner occupied, that all parking be in the rear of the permitted uses or be otherwise adequately screened, and that permitted uses be limited to professional offices, including lawyers, doctors, dentists, architects, nutritionists, naturopaths, chiropractors, and physical therapists. (ROR, Item 4, Minutes of the Planning and Zoning Commission Meeting of February 15, 1995.) On April 11, 1995, the commission drafted a proposed amendment to the Trumbull Zoning Regulations, creating a "Historic Design District." (ROR, Item 4a, Proposed Historic Design District Regulation.) On May 17, 1995, the commission held a public hearing on the proposed "Historic Design District." (ROR, Item 9, Minutes of the Planning and Zoning Commission Meeting of May 17, 1995.) Notice of the public hearing was published on May 6 and May 12, 1995. (ROR, Item 6, Certificate of Publication of Legal Notice.) Following the public hearing, the commission modified the proposed Design District regulation at work sessions held on June 8 and June 29, 1995. (ROR, Items 11 
12.) Thereafter, at the June 29, 1995 work session, the CT Page 7605 commission unanimously voted to adopt the proposed Design District regulation, as modified, effective July 13, 1995. (ROR, Item 12.)
The Design District regulation amended the town of Trumbull Zoning Regulations, Article II, Use Regulations, § 1, Residence Zones. (ROR, Item 12.) The Design District regulation, in its entirety, states:
F. Design District
STATEMENT OF PURPOSE
To provide homeowners in a designated area the opportunity to preserve the basic structure of and single family appearance of homes in a residential neighborhood by providing additional uses of a professional nature which will preserve the residential character of the remaining homes in an area that has uses other than single family homes.
(1) Location
For purposes of this regulation, the Design District shall be located along White Plains Road (Rte. 127) from the intersection of Unity Road and White Plains Road, extending northwesterly to the intersection of Reservoir Avenue and White Plains Road. All properties having frontage of White Plains Road or an existing easement for access onto White Plains Road shall be included, except for the following:
(Note: Boundary description on file in Town Clerk's Office and Planning and Zoning Office.)
(a) Properties zoned for multi-family and/or affordable housing shall not be included.
(b) No property subdivided after the effective date of these regulations shall be included.
(2) Conditions
(a) Parking shall be permitted in the rear yard and the side yard with landscaped buffers; parking is prohibited in a front yard, and side yard parking shall be no closer to the street line than the dwelling. CT Page 7606
(b) A minimum of four (4) off-street parking spaces, a minimum of 9' x 18', shall be permitted for each permitted use, except for funeral homes as specified in par. F (3)(a) below; no street parking shall be permitted.
(c) this use shall not be permitted in a home constructed after the effective date of these regulations.
(d) The business user must own, occupy and maintain an office or business in the subject premises.
(e) Only one such use shall be permitted per dwelling; only two of the same use shall be permitted in the entire district.
(f) Building coverage shall not exceed 25%
(g) [sic] Signage for funeral homes shall be limited to one per lot, no larger than 12 square feet, ground lighting only, and set back a minimum of 10 feet from the property line; all other signage shall be on a front door plate near the street number and shall not exceed 4" x 8".
(3) Permitted Uses
Professional persons in the following list shall be licensed by the state of Connecticut.
(a) Funeral Homes
 (1) The minimum lot area shall be 4.5 acres.
 (2) The minimum road frontage shall be 400 ft.
 (3) A minimum of thirty (30) off-street parking spaces shall be provided.
(b) Attorneys at Law
(c) Accountants
(d) Architects CT Page 7607
(e) Engineers and Surveyors
(f) Medical professional persons, which shall include doctors of medicine, dentistry, optometry, chiropody, podiatry, osteopathy, naturopath, etc., but specifically excluding from such definition doctors of veterinary medicine.
(g) Registered dieticians
(h) Psychologists
(i) real estate offices
(j) family therapists
(k) Social workers
(l) Nurse clinicians
(m) Insurance agents
(4) Application Procedure
(a) An application for a Special Permit for a permitted use in an [sic] Design District shall be made to the Planning and Zoning Commission, and shall include the following:
 (1) A notarized letter of application from the owner(s) stating that he/they will occupy and maintain an office or business in the subject premises, except for bona fide temporary absences;
 (2) A floor plan of 1/4 inch to the foot showing proposed changes to the building;
 (3) An accurate description of the proposed use; four sets of all drawings, including any proposed addition, elevations, and certified plot plan for the facility. These plans shall show the location of all buildings, building material (if used), uses, parking areas, traffic access and circulation drives, open spaces, landscaping, exterior lighting, signage, and special features CT Page 7608 relating to the property.
 (b) A public hearing will be held on all applications for this use, in accordance with applicable State statutes.
Notice of the commission's adoption of the Design District regulation was published on July 12, 1995. (ROR, Item 14.) The Hart plaintiffs and the Stanley plaintiffs now appeal the adoption of the Design District regulation.
All of the plaintiffs own, or abut, property located within the Design District.
Abriola also owns property located within the Design District. Abriola intends to operate a funeral home on his property within the Design District. (ROR, Item 10.) Essentially, the plaintiffs oppose Abriola's operation of a funeral home on his property located within the Design District.
It is well established "that a statutory right of appeal from a decision of [a local zoning commission] may be taken advantage of only by strict compliance with the statutory provisions by which it is created. . . . [Such] provisions are mandatory and jurisdictional in nature, and, if not complied with, the appeal is subject to dismissal." (Internal quotation marks omitted.)Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). The court finds that such compliance has been met by the plaintiffs.
General Statutes § 8-8 (b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court . . . ." "Pleading and proof of facts that constitute aggrievement are essential prerequisites to the trial court's subject matter jurisdiction over an administrative appeal." New England Rehabilitation Hospital of Hartford. Inc.v. CHHC, 226 Conn. 105, 120, 627 A.2d 1257 (1993). Aggrievement is a jurisdictional requirement and a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planning and ZoningCommission, 219 Conn. 303, 307, 592 A.2d 953 (1991). At the hearing conducted on February 25, 1997, this court determined that all of the plaintiffs were aggrieved.
The decision of the commission was published in The Connecticut Post on July 12, 1995. (ROR, Item 14.) On July 15, CT Page 7609 1995, the Hart plaintiffs commenced their appeal by service of process upon Joan Gruce, clerk of the commission, Anthony Capasso, chairman of the commission, and Linda Lungi, town clerk of Trumbull. On July 18, 1995, the Stanley plaintiffs commenced their appeal by service of process on Joan Gruce, clerk of the commission, Anthony Capasso, chairmen of the commission, and Linda Lungi, town clerk of Trumbull.
The Connecticut Supreme Court has "often articulated the proper, limited scope of judicial review of a decision of a local zoning commission when it acts in a legislative capacity by amending zoning regulations. [T]he commission, acting in a legislative capacity, [has] broad authority to adopt the amendments. . . . In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. . . . Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change . . . . The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function. . . . This legislative discretion is wide and liberal, and must not be disturbed by the courts unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally. . . . Zoning must be sufficiently flexible to meet the demands of increased population and evolutionary changes in such fields as architecture, transportation, and redevelopment. . . . The responsibility for meeting these demands rests, under our law, with the reasoned discretion of each municipality acting through its duly authorized zoning commission. Courts will not interfere with these local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion. . . ."Protect Hamden/North Haven from Excessive Traffic and Pollutionv. Planning and Zoning, 220 Conn. 527, 542-44, 600 A.2d 757
(1991).
The Hart plaintiffs and the Stanley plaintiffs advance CT Page 7610 similar arguments in support of their respective appeals. The court will therefore treat the Hart plaintiffs and the Stanley plaintiffs as a single group of plaintiffs for the purpose of analyzing the merits of this consolidated appeal. Accordingly, the Hart plaintiffs and the Stanley plaintiffs will hereinafter be referred to collectively as "the plaintiffs" unless otherwise specified.
The plaintiffs argue that the court should sustain their appeal because the commission: (1) failed to properly identify the boundaries of the Design District as required by General Statutes § 8-3 (a); (2) acted illegally, arbitrarily, and in abuse of its discretion; and, (3) engaged in spot zoning. These arguments will be addressed seriatim.
The plaintiffs claim that the commission's failure to file a copy of the proposed change in zone boundaries with the town clerk prior to the public hearing violated General Statutes §8-3 (a) and thereby invalidated the Design District regulation. Specifically, the Hart plaintiffs argue that the commission has violated § 8-3 (a) by not filing a metes and bounds description of the proposed Design district prior to the public hearing; the Stanley plaintiffs claim that the commission failed to file an adequate description. The commission responds that it has sufficiently complied with § 8-3 (a).
General Statutes § 8-3 (a) provides, in pertinent part, that "[n]otice of the time and place of such hearing [concerning a change in the zoning regulations] shall be published in the form of a legal advertisement appearing in a newspaper having a substantial circulation in such municipality at least twice at intervals of not less than two days, the first not more than fifteen days nor less than ten days, and the last not less than two days, before such hearing, and a copy of such proposedregulation or boundary shall be filed in the office of the town,city or borough clerk, as the case may be, in such municipality, but, in the case of a district, in the offices of both the district clerk and the town clerk of the town in which such district is located, for public inspection at least ten days before such hearing, and may be published in full in such paper. . . ." (Emphasis added.)
"Section 8-3 (a) exists to ensure that interested persons are apprised of such contemplated [zone] changes." Timber TrailsCorporation v. Planning Zoning Commission, 222 Conn. 374, CT Page 7611 379-80, 610 A.2d 617 (1992). "The purpose of these procedural requirements of 8-3 (a) is fairly and sufficiently to apprise those who may be affected by the proposed action of the nature and character of the proposed action so as to enable them to prepare intelligently for the hearing." (Internal quotation marks omitted.) Bombero v. Planning Zoning Commission,17 Conn. App. 150, 154, 550 A.2d 1098 (1988). Compliance with General Statutes § 8-3 (a) is "a prerequisite to any valid and effective change in zonal boundaries." Timber Trails Corporationv. Planning Zoning Commission, supra, 222 Conn. 378; State exrel. Capurso v. Flis, 144 Conn. 473, 481, 133 A.2d 901 (1957).
On its face, however, § 8-3 (a) does not require a metes and bounds description of the proposed zone, nor does it specify what type of boundary description is required to satisfy the statute. In Bombero v. Planning Zoning Commission, supra,17 Conn. App. 154, the Appellate Court indicated that the filing of "a map [or] any other boundary designation[,]" could satisfy § 8-3 (a). The plaintiffs do not offer any authority for the proposition that § 8-3 (a) mandates the filing of a metes and bounds boundary description, and it is submitted that the court may find that the notice requirement of § 8-3 (a) is satisfied by any boundary description that sufficiently apprises all interested persons of the proposed change in zone boundaries, and does not require that the proposed boundary change be described by metes and bounds.
In the present appeal, there is no dispute that the, commission did not file a metes and bounds boundary description with the Trumbull town clerk. However, it is also undisputed that the commission did file a copy of the proposed Design District regulation which contained the following property description: "For purposes of this regulation, the Design District shall be located along White Plains Road (Rte. 127) from the intersection of Unity Road and white Plains Road, extending northwesterly to the intersection of Reservoir Avenue and White Plains Road. All properties having frontage on White Plains Road shall be included, except the following: (Note: Boundary description may be inserted in this section.) (a) Properties zoned for multi-family and/or affordable housing shall not be included. (b) No property subdivided after the effective date of these regulations shall be included." (ROR, Items 4a, 6 9). Despite the commission's parenthetical notation, it is submitted that this description of the Design District sufficiently apprised all interested parties of the zone change and, therefore, CT Page 7612 satisfied § 8-3 (a).
The plaintiffs next claim that the commission acted arbitrarily, illegally and in abuse of its discretion by enacting the Design District. The commission responds that it acted properly when proposing and enacting the Design District.
As previously noted, when establishing or changing zoning regulations, local zoning authorities act in a legislative capacity and have broad and liberal discretion, accordingly, the legislative decisions of local zoning authorities will not be disturbed unless the party aggrieved by the legislative action can demonstrate that the zoning authority acted illegally, arbitrarily, or in abuse of its discretion. Protect Hamden/NorthHaven from Excessive Traffic Pollution v. Planning and ZoningCommission, supra, 220 Conn. 542-44. "Within these broad parameters, [t]he test of the action of the commission is twofold: (1) The zone change must be in accord with a comprehensive plan . . . and (2) it must be reasonably related to the normal police power purposes enumerated in 8-2 . . . ." (Citations omitted, internal quotation marks omitted.) ProtectHamden/North Haven from Excessive Traffic Pollution v. Planning Zoning Commission, supra, 220 Conn. 544. Furthermore, "[w]here a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations . . . The zone change must be sustained if even one of the stated reasons is sufficient to support it. . . ." (Citations omitted, internal quotation marks omitted.)Id. 544.
"A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties. . . . The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the entire community." (Citations omitted.) First Hartford RealtyCorporation v. Plan Zoning Commission, 165 Conn. 533, 541,338 A.2d 490 (1973). "In the absence of a formally adopted comprehensive plan, a town's comprehensive plan is to be found in the scheme of the zoning regulations themselves." (Internal quotation marks omitted.) Protect Hamden/North Haven fromCT Page 7613Excessive Traffic Pollution v. Planning Zoning, supra,220 Conn. 551.
The preamble to the Zoning Regulations of the Town of Trumbull states the purpose of such regulations as "providing for the health, safety and general welfare of the Town of Trumbull, to conserve the value of real property, to encourage the most appropriate use thereof throughout the town and to accomplish the other purposes set forth in detail in [General Statutes Chapter 124, Zoning] . . . ."
General Statutes § 8-2 (a) provides, in pertinent part, that "[zoning] regulations shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."
In the present appeal, the commission formally stated that the purpose of the Design District was "[t]o provide homeowners in a designated area the opportunity to preserve the basic structure of and single family appearance of homes in a residential neighborhood by-providing additional uses of a professional nature which will preserve the residential character of the remaining homes in an area that has uses other than single family homes." (ROR, Item 13.)
A review of the record reveals the following facts. The area located within the Design District was once a predominantly residential neighborhood. (ROR, Item 10, p. 59.) Although many properties located within the Design District are still maintained as residences; (ROR, Item 10h); White Plains Road has become a busy thoroughfare due to its access to the Merritt Parkway and Route 25 (ROR, Items 10 10t), and because of its proximity to the Trumbull Shopping Center, a commercial zone. (ROR, Item 10t.) These factors contributed to make the area included in the Design District less desirable for low density residential use and more suitable for professional offices. (ROR, CT Page 7614 Item 10, p. 56.) Indeed, the Design District, when previously zoned as a residential district, included eight non-conforming commercial uses such as a doctor's office, a real estate office, and a funeral home. (ROR, Item 10.) Additionally, the record contains testimony that the Design District regulation would not only preserve and enhance the properties located in the Design District, but would also increase their property values by permitting controlled professional development. (ROR, Item 10, p. 57.) The commission indicated that the Design District was proposed "for the purpose . . . of protecting homes in the area from over-commercialization, and providing a large piece of property (min. 4.5 acres) to locate a funeral home. These uses will maintain the visual appearance of a residential home. Other uses that could be proposed would be much more detrimental to residents in the area." (ROR, Item 12.) Furthermore, the commission received 130 letters in support of the Design District regulation and numerous Trumbull residents spoke in favor of the regulation at the May 17, 1995 public hearing. (ROR, Items 10 
10c.)
The comprehensive plan of Trumbull, as embodied in the Trumbull Zoning Regulations, allows the commission to conserve the value of real property and to encourage the most appropriate use of real property. The commission stated that the purpose of the Design District was to preserve the residential character and appearance of the area while preserving the property values of the properties located in the Design District. It is submitted that the aforementioned record evidence reasonably supports the commission's stated reason for proposing and enacting the Design District regulation and demonstrates that the Design District regulation is in harmony with Trumbull's comprehensive plan. SeeLanger v. Planning Zoning Commission, 163 Conn. 453, 459-60,313 A.2d 44 (1972). In Langer, the Westport planning and zoning commission established a restricted professional office district [RPOD] in an effort to afford a reasonable and desirable transition between established business districts and older residential areas. In enacting the RPOD, the commission considered, inter alia, various changes in the vicinity including the proximity of the RPOD to an existing business district; the fact that seven properties in the RPOD were already being used as nonconforming professional uses when the RPOD was previously zoned as a residential district; the fact that the large old dwellings in the RPOD were no longer desired for residential use; and, that a zone change could conserve the value of property in the RPOD. The Supreme Court held that the Westport planning and CT Page 7615 zoning commission reached an honest and reasonable judgment in accord with the Westport comprehensive plan. Id. In addition, our Supreme Court has held, "[w]here the zoning authority acts to limit the amount of commercial development in the best interests of the community as a whole and in accordance with a comprehensive plan, the requirement of § 8-2 that zoning regulations be designed to promote the general welfare with a view to . . . encouraging the most appropriate use of land throughout the community, is satisfied." (Internal quotation marks omitted.) First Hartford Realty Corporation v. Plan Zoning Commission, supra, 165 Conn. 543-44.
Accordingly, the court finds that the Design District regulation is in harmony with the Trumbull comprehensive plan and is reasonably related to the normal police powers set forth in General Statutes § 8-2.
Finally, the plaintiffs claim that the commission engaged in impermissible spot zoning. The commission responds that it has not engaged in spot zoning.
"Our courts consistently have invalidated zoning decisions that have constituted spot zoning. [S]pot zoning is the reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood . . . . Two elements must be satisfied before spot zoning can be said to exist. First, the zone change must concern a small area of land. Second, the change must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole." (Citations omitted, internal quotation marks omitted.)Michel v. Planning Zoning Commission, 28 Conn. App. 314, 319,612 A.2d 778, cert. denied, 223 Conn. 923, 614 A.2d 824 (1992).
The Design District encompasses a short stretch of land located on both sides of White Plains Road. It is submitted that the first element of spot zoning is satisfied. As determined above, however, the Design District regulation is in harmony with Trumbull's comprehensive plan, consequently, the second element of spot zoning has not been satisfied. See Langer v. Planning Zoning Commission, supra, 163 Conn. 461-62.
Judgment may enter dismissing the plaintiffs' appeals.
MILTON H. BELINKIE JUDGE TRIAL REFEREE CT Page 7616