[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff appellant in this case, Dr. Michael F. Showah, appeals from a denial of his petition for a change of zone for his property located at 3000 Park Avenue, Bridgeport, from R-1 Residence A to R-1 Residence C. Dr. Showah is a chiropractor and has occupied these premises since 1984 as his office and his residence. The office is located on the first floor and his private quarters are on the second floor. He claims that from 1984 to 1997 he was a permitted home office within the zoning district, but in 1997, because of new zoning classifications, he became a non-conforming use.
In his initial petition dated March 23, 1998, which he filed personally, he indicated on the petition that, "No change of use anticipated under the application." Initially, the first public hearing on the application was scheduled for May 26, 1998, which was then postponed until June 2 and then to June 29. Some time in May of 1998, Dr. Showah employed Attorney Charles Willinger of the law firm of Willinger, Shepro, Tower Bucci to represent him and on June 18, 1998 a revised, corrected petition was filed with the Commission and that petition was signed by Attorney Thomas Bucci, Jr., on behalf of Dr. Showah. In that corrected petition, in addition to asking for the zone change, petitioner indicated that he intended to create offices for not more than three doctors.
The public hearing on the petition was conducted on June 29, 1998, and Attorney Charles Willinger made a presentation on behalf of Dr. Showah. Mr. Willinger described Dr. Showah's property as a two story residential building fronting on Park Avenue, with two of the other boundaries fronting an R-1 Residence C property and one boundary fronting an R-1 Residence A property. Mr. Willinger described his client's intent to CT Page 6440 create "a multidimentional medical office on this site of two or three other professionals somewhat related to his practice." He further indicated that Dr. Showah would no longer live on the premises and, therefore, would no longer seek the protection of a home office accessory use of property by someone who also resides at the property. The public hearing was short and there was no opposition. It is interesting to note that at no time did Attorney Willinger complain that the Commission had failed to follow any of the statutory time limitations for processing this petition.
The Return of Record shows that all city departments, with the exception of one, either supported or did not oppose the petition. The one exception was William E. Minor, a consultant for the commission, on stationary of the Department of City Planning, who recommended that the petition be denied. His original letter recommending denial dated May 21, 1998 (Return of Record exhibit F) in item 6 described the parcel in question under the Master Plan to be in the Residence-2 District. He corrected this error in a revised letter dated May 26, 1998, where he correctly described the subject property under the Master Plan to be in Residence-3 district. This is important because it is the appellant's position that the Residence-3 district under the Master Plan is almost duplicative of the uses permitted with the R-1 Residence C classification that he was seeking. Whatever the case may be, the Commission had the correct reference at the time of the public hearing, and Mr. Minor continued in his opposition to the petition for all of the same reasons set forth in his original letter of May 21, 1998.
Thereafter, on August 10, 1998, the Commission, in a vote of five in favor of denial and two in favor of approval, voted to deny the appellant's petition and so notified Attorney Willinger in a letter dated August 12, 1998. The Commission gave three reasons for its denial:
 1. The granting of the change of zone would result in the introduction of a multitude of new uses into the area that would not conform with the development in the immediate area.
 2. The granting of the petition would result in spot zoning.
 3. This proposed change of zone would adversely impact properties located on the side streets from Park Avenue in the immediate area of the subject site and could result in additional traffic in the area.
From this decision the appellant, acting pro se, filed an appeal making CT Page 6441 numerous claims against the action taken by the Commission. He thereafter, on January 8, 1999, filed "Plaintiff's Complaint Summary in Brief", which was acknowledged at the trial of this matter to be the plaintiff-appellant's brief in this case. At the time of trial, however, Dr. Showah was represented by Attorney Thomas Bucci, Jr., formerly of Mr. Willinger's law firm. At the trial, Mr. Bucci basically argued that the Commission's reasons for denial were not supported by the record, and he did not argue, but adopted, the plaintiff's claims concerning time limitations contained in the plaintiff's brief. He appeared to waive other arguments and claims contained in the plaintiff's brief.
In reviewing an appeal from an administrative agency, the trial court must determine whether the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Smith v. Zoning Board ofAppeals, 227 Conn. 71, 80 (1994).
A local zoning authority, in enacting or amending its regulations, acts in a legislative rather than in an administrative capacity. Parks v.Planning Zoning Commission, 178 Conn. 657, 660 (1979). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing." Bloom v. ZoningBoard of Appeals, 233 Conn. 198, 206 (1995). Where a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement of the commission. WestHartford Interfaith Coalition, Inc. v. Town Council, 228 Conn. 498, 514
(1994).
Courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution. First Hartford Realty Corp. v. Planning ZoningCommission, 165 Conn. 533, 540-541 (1973). With these standards in mind, a review of the issues demonstrates that there is no basis to reverse the decision of the Planning Zoning Commission.
In order to grant a change of zone, the plaintiff must demonstrate that the change of zone: (1) is in accordance with the comprehensive plan, and (2), it is reasonably related to the normal police powers in Connecticut General Statutes § 8-2. Ghent v. Zoning Commission of City ofWaterbury, 220 Conn. 584 (1991).
A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties. Summ v. Zoning Commission, CT Page 6442150 Conn. 79, 87 (1962). The comprehensive plan of zoning is to be found in the regulations themselves. Loh v. Town Planning Zoning Commission, 161 Conn. 32 (1971). The requirement of adherence to the comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interests of the entire community. First Hartford RealtyCorporation v. Planning Zoning Commission, 165 Conn. 533
(1973).
The proposed use of the property must do more than merely fulfill the wishes of the owner in carrying out its plans, it must serve the public interest. Vece v. Zoning Planning Commission, 148 Conn. 500 (1961).
In the present action, the Commission considered the fact that the property is now used in a manner which permits Dr. Showah to conduct his practice out of his home. It is basically what is considered a home-office. The only practitioner is Dr. Showah, which, therefore, would limit the number of patients in this area, which is designated residential, so as not to over intensify and burden neighbors with a business.
The Commission in its decision to deny considered the impact of this change of zone to the surrounding area. To better understand their decision, reference should be made to the differences between R-1 Residence A and R-1 Residence C. Under section 4-2-1, the designation and intention of the R-A zone is "to preserve existing low density residential neighborhoods by restricting detached Single Family Dwellings . . . and by strictly limiting non-residential use." Contrast that language to the language in section 4-4-1 defining the purpose of the R-C zone as designed and intended to provide for high density residential neighborhoods with a safe and natural residential character by promoting a maximum variety of housing type, including Multifamily Dwellings, and by allowing a range of non-residential uses that would, when properly regulated, provide the services, recreational facilities and opportunities for social interchange that enhance residential life.
The main distinction is that in the R-A zone non-residential uses are discouraged where in the R-C zone they are encouraged. This is exactly what Dr. Showah wants to do, create a medical complex in a single family residential zone. The regulations also distinguishes the 2 residential zone by allowing in the R-C zone greater building densities and taller buildings.
This court cannot and will not substitute its discretion for that of the Bridgeport Planning Zoning Commission in refusing to change this zone for the plaintiff. He appears to be the only one benefitted [benefited] by this CT Page 6443 change and that is not within the purpose of Connecticut General Statutes § 8-2. Dr. Showah may remain on these premises and conduct the same practice that he has had for the past 16 years. He can do that as long as he resides on the premises. If he vacates the premises, he must terminate his practice. That is how a home-office in a residential zone has always been defined. If he wants to create "a multi dimensional medical office" as Attorney Willinger described at the public hearing, he should move that complex to the appropriate zone.
The court finds that the reasons stated by the Commission for its denial of the original petition are proper and certainly not in abuse of its discretion in determining matters such as this. The fact that the Master Plan may call for something different in the future does not require this Commission on this petition to grant any zone change now.
The plaintiff has raised a number of issues which he alleges were procedural errors which entitle him to an automatic approval. The first of these arguments that the defendants violated Connecticut General Statutes § 8-7d regarding the conducting of a public hearing outside of the statutory period of time. The time noted in Connecticut General Statutes § 8-7d begins to run for purposes of day of receipt of a petition on the day of the "next regularly scheduled meeting of such commission or board immediately following the day of submission to such board or commission." In the present action, the plaintiff does not provide the day of the next meeting to the court but, instead begins to count from the date of his application. Defendants contend that in fact the date of the next meeting was March 30, 1998, which satisfied the criteria of 65 days. However, even if the court does not receive evidence of this date, there is no basis for allowing an automatic approval for a number of reasons. First of all, the court have not found such a mandatory directive in an action which involves a legislative rather than administrative action. In Coastal Suburban Builders, Inc. v. Planning Zoning Commission of Town of East Haven, 2 Conn. App. 489 (1984), the court found that when a zoning commission acts legislatively on a zone change, that failure to act within the time limits in § 8-7d(a) is directory only and does not result in automatic approval of a zone change. The court found that there was a distinction between administrative and legislative functions, and an automatic approval would adversely affect the commission's ability to act as a legislative body.Coastal Suburban, supra at 493.
Simply because the statute utilizes the word "shall" does not require a mandatory act. The courts have determined that whether the statute is mandatory or directory depends upon the essential purpose of the statute.United Illuminating Co. v. City of New Haven, 240 Conn. 422, 465 (1997). Therefore, the 65 day limit is not mandatory simply by the language. The CT Page 6444 purpose of the change of zone must also be considered. In this light, the 65 day time limit, if not satisfied, does not subject the application to an automatic approval.
Secondly, the plaintiff submitted a Revised and Corrected Application through his attorney, which, in fact, was different from the original application and began the 65 day time period once again.
Thirdly, the plaintiff appellant's attorney at or about the time of the public hearing never made any such claim, and it was their revised petition of June 18, 1998, which for the first time described what Dr. Showah actually wanted to do with his property. The public hearing was held well within the time limits established from that petition and from the notice published in the Connecticut Post on this petition. (See Return of Record E and M.)
For all of the foregoing reasons, the appeal is dismissed.
GORMLEY, J.