[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Richard Mollica, Frank Perrella, Donald Stevens, Valery Wittstein, Robert Caouette, Mrs. Oliver Wetmore, Mary Mangini and Mary Santos, appeal from the decision of the defendant, planning and zoning commission of the town of Middlebury (Commission), approving a zone change of three parcels of land from R-40 to Senior Residential District (SRD).
This is one of three related appeals arising out of the commission's approval of a zone change of three parcels of land from CA-40 to R-40 and then from R-40 to SRD.[1] On April 28, 1999, C.O.R. Associates (C.O.R.), an owner of land totaling 11.2 acres and designated as lots 169, 170 and 172 on map 4-06, filed an application with the commission seeking a zone change of the subject parcels from CA-40 to R-40. (Return of Record [ROR], Item 2a(1).) On the same day, C.O.R. also filed an application and preliminary site plan seeking a zone change of the same parcels from R-40 to Senior Residential District (SRD). (ROR, Items 2a(2) and 2c.) On May 6, 1999, the commission scheduled public hearings for both applications to be held on June 3, 1999.[2] (ROR, Item 4.) At the first hearing, the commission heard testimony from a C.O.R. representative regarding the proposed zone change from CA-40 to R-40. (ROR, Item 7.) The commission then voted unanimously to close the public hearing with respect to the proposed change from CA-40 to R-40.[3]
(ROR, Item 7.) On September 2, 1999, the commission approved both zone change applications and the preliminary site plan, and rezoned lots 169, 170 and 172 from CA-40 to R-40, and then from R-40 to SRD. (ROR, Item 15.) At the same time, the commission denied the final development plan, citing public water availability and drainage problems. (ROR, Items 15 and 50.)
Presently before the court is the plaintiffs' appeal of the commission's approval of the zone change from R-40 to SRD. As grounds for the appeal, the plaintiffs allege that the commission's approval of the zone change was not in compliance with the town's comprehensive plan, that the zone change is inconsistent with the requirements of General Statutes § 8-2, and that the notice provided for the public hearing was defective.[4] The plaintiffs seek, as relief, that this court sustain the appeal, reverse the decision of the commission as to the change of zone from R-40 to SRD and restrain the defendants "from taking any action designed or intended to allow or permit the enforcement of the zone change from R-40 to SRD." (Complaint, Prayer for Relief, ¶¶ a-c.) CT Page 16812
General Statutes § 8-8 governs appeals taken from the decisions of a zoning commission to the superior court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Bridgeport Bowl-O-Rama v. Zoning Board of Appeals, 195 Conn. 276, 283,487 A.2d 559 (1985).
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). "`Aggrieved person . . . includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8
(a)(1). The plaintiffs allege that they are statutorily aggrieved by the commissions's decision because "they are owners of real property . . . which abuts the subject property, and the Plaintiffs' use of such abutting real property, and the value of such abutting real property, would be adversely affected by the increased development, traffic and depletion of natural resources which would result from the . . . applicant's plans, as expressed in its preliminary site plan application." (Complaint, ¶ 11.) In an earlier decision, this court found that the plaintiffs were statutorily aggrieved. See Mollica v. Middlebury PlanningCommission, Superior Court, judicial district of Waterbury, Docket No. 155622 (July 9, 2001, West, J.).
General Statutes § 8-8 (b) provides, in part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) [now subsection (f)] further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
The plaintiffs allege that the commission's decision approving the zone change from CA-40 to R-40 was published in the Waterbury Republican-American on September 15, 1999. (Complaint, ¶ 9.) On October 1, 1999, this appeal was commenced by service of process on William Stowell, the chairman of the commission and upon Alicia Ostar, the town clerk of the town of Middlebury. For the purpose of determining whether an appeal has been commenced within the statutorily prescribed fifteen day period, "the date of service is included and the date the decision is published is excluded." R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (1999) § 25.10, p. 15. Because the CT Page 16813 commission's decision was published on September 15, 2001, service of process must have been completed on or before September 30, 2001. General Statutes § 52-593a, however, provides: "Except in the case of an appeal from an administrative agency governed by section 4-183, a cause or right of action shall not be lost because of the passage of the time limited by law within which the action may be brought, if the process to be served is personally delivered to the office of any sheriff within the time limited by law, and the process is served, as provided by law, within fifteen days of the delivery." The saving provision of § 52-593a
applies to zoning appeals. See, e.g., Russell v. Zoning Board of Appeals, Superior Court, judicial district of New London at New London, Docket No. 553810 (October 5, 2000, Hurley, J.); Mercieri v. Zoning Board ofAppeals, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 445844 (April 24, 1995, Rubinow, J.); Francini v.Zoning Board of Appeals, Superior Court, judicial district of New London at New London, Docket No. 519228 (September 16, 1992, Hurley, J.), aff'd on other grounds, 228 Conn. 785 639 A.2d 519 (1994). In the present case, although service of process was not effectuated until October 1, 1999, the plaintiffs committed service to the marshal on September 30, 1999. (Affidavit of State Marshal Joseph Butler attached to Plaintiffs' Motion for Reconsideration.) Because the plaintiffs committed service to the marshal within the time prescribed by § 8-8 (b) and because the marshal, in turn, served process on the commission and the town within fifteen days of the process having been delivered to him, in accordance with § 52-593a (a), the plaintiffs' appeal is timely.
"The present appeal, involving a decision upon an application for a change of zone, [requires] the trial court to review a decision made by the commission in its legislative capacity. In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. . . ." (Citations omitted.) Burnham v. Planning Zoning Commission, 189 Conn. 261, 265,455 A.2d 339 (1983). "[C]ourts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers." First HartfordRealty Corporation v. Plan Zoning Commission, 165 Conn. 533, 540,338 A.2d 490 (1973). "The courts allow zoning authorities this discretion in determining the public need and the means of meeting it, because the local authority lives close to the circumstances and conditions which create the problem and shape the solution." (Internal quotation marks omitted.) Id. "Courts, therefore, must not disturb the decision of a zoning commission unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally." Id., 540-41; see CT Page 16814 also Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554,573, 538 A.2d 1039 (1988). In determining whether a zone change was arbitrary or illegal, "[t]he test of the action of the commission is two-fold: (1) The zone change must be in accord with a comprehensive plan . . . and (2) it must be reasonably related to the normal police power purposes enumerated in [General Statutes] § 8-2. . . ." (Citations omitted; internal quotation marks omitted.) First Hartford RealtyCorporation v. Plan Zoning Commission, supra, 541. "The comprehensive plan is found in the scheme of the zoning regulations themselves and the zoning map established pursuant to those regulations." Burnham v.Planning Zoning Commission, supra, 189 Conn. 267. "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.)Cadlerock Properties v. Commissioner, 253 Conn. 661, 676, 757 A.2d 1
(2000). The trial court, however, may not "retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its [decision], acted unreasonably, arbitrarily, illegally or in abuse of its discretion" (Citations omitted.) Id.; accord Irwin v. Planning Zoning Commission, 244 Conn. 619, 627-29, 629 A.2d 675 (1998).
At the September 2, 1999, public hearing, the chairman of the commission presented a single set of findings as to the two proposed zone changes. The commission stated that the change from CA-40 to R-40 and R-40 to SRD fulfilled the purpose of § 24.1 of the town's zoning regulations, which is to (1) provide for diversity of affordable senior housing, (2) protect environmentally significant areas and (3) preserve significant amounts of open space.[5] (ROR, Item 71, p. 45.) The commission further found that the preliminary development site plan submitted by the applicant complied with all relevant sections of the zoning regulations pertaining to SRDs, except that, with regard to water, the commission found that "there is currently not a public water supply available." (ROR, Item 71, p. 45.) The commission then voted to approve the zone changes from CA-40 to R-40 and R-40 to SRD. The SRD approval included approval of the preliminary development plan.[6](ROR, Item 71, pp. 45-46.)
The plaintiffs appeal the commission's approval of the zone change from R-40 to SRD on the ground that the zone change was not in accordance with the town's comprehensive plan, specifically § 24.2.5 of the Middlebury Planning and Zoning Regulations, which provides that a Senior Residential District "is only allowed where . . . immediate access to an existing public water system is available, provided the Water Commission CT Page 16815 has determined an adequate supply exists for domestic service and fire protection." (ROR, Item 1, p. 24-1.) The plaintiffs argue that "[w]ithout immediate public water, the Zoning Commission is banned by its regulations to change the zone from CA-40 to R-40 and then from R-40 to Senior Residential District." (Plaintiffs' Brief, p. 11.) C.O.R. replies that § 24.2.5 does not require that an application for an SRD zone change include proof of immediate access to an existing public water supply. (C.O.R.'s Trial Brief, p. 6.) Instead, C.O.R. argues, "it is obvious that the regulations contemplate the water and sewer issue to be after the zone change and part of the site approval process." (C.O.R.'s Trial Brief, p. 6.) The commission also argues that "at the zone change stage of development the [r]egulations require availability of water. The final approval plan process is the appropriate juncture in the proceedings to require a specific water proposal." (Commission's Brief, pp. 6-7.) Nevertheless, the commission argues, it complied fully with each regulation pertaining to SRDs, including the requirement of immediate access to an existing public water system. "It is this section of the Regulations which provides the sole basis of the Plaintiffs' assertion that the zone changes were not part of the comprehensive plan. Contrary to the Plaintiffs' assertions, the Middlebury Water Commission reviewed C.O.R.'s proposal for a well and water storage tank for the project and `determined that the project meets the requirements of P Z Regulation 24.2.5.'" (Commission's Brief, p. 6.) The record indicates, however, that the water system which the water commission determined met the requirements of § 24.2.5 belongs to Middlebury Commons, an adjacent senior housing development and home to several of the plaintiffs in this case. (ROR, Items 20 and 70, pp. 26-27. The record further indicates that C.O.R. approached Middlebury Commons with a proposal for tying into the water system there after the water commission determined that the well capacity at Middlebury Commons was adequate to meet the needs of both communities. (ROR Items 20 and 70, pp. 26-27.) The Middlebury Commons board of directors, however, voted to deny C.O.R. access to their water. (ROR, Item 37.) On August 19, 1999, after being turned down by Middlebury Commons, C.O.R. applied to the department of public utility control for a permit to develop its own community water system.[7] (ROR, Item 46.) The record establishes, therefore, that at the time the commission approved the zone change, C.O.R. did not have access to an existing public water system. After a municipal land use agency has adopted regulations, however, it is required to follow them. Westport v. Norwalk, 167 Conn. 151,155, 157, 355 A.2d 25 (1974). The issue, then, is whether access to an existing public water system is required under the regulations pertaining to SRDs because, for a zone change to be legal, it must be in accord with the town's comprehensive plan; First Hartford Realty v. Plan ZoningCommission, supra, 165 Conn. 541; which is found in the scheme of the zoning regulations themselves. Burnham v. Planning Zoning Commission, supra, 189 Conn. 267. CT Page 16816
The commission's and C.O.R.'s contention that access to an existing public water system is not required at the zone change stage belies the clear language of the relevant sections of the Middlebury planning and zoning regulations. Section 24.2 of the regulations provides: "No parcel of land shall be considered for a Senior Residential District unless it complies with the following standards. . . ." Subsection 24.2.5 then states: "The SR is only allowed where . . . (b) immediate access to an existing public water system is available, provided the Water Commission has determined an adequate supply exists for domestic service and fire protection." Finally, § 24.4.3 provides in relevant part: "In order to approve a zone change and Preliminary Development Plan submitted under this Section, the Commission shall first make the following findings: . . . (b) the qualifying standards of Section 24.2 and design standards of Section 24.7 have been met." The language of § 24 is plain and unambiguous. No parcel of land may be considered for SRD zoning unless it complies with express standards, one of which is immediate access to an existing public water system. Moreover, in order to approve a zone change under the section, the commission must find that the qualifying standards of § 24.2, which include the water requirement, have been met. Here, however, the commission expressly found that "there is currently not a public water supply available." (ROR, Item 71, p. 45.)
"The issue of whether a zoning commission may approve an application for a zone change that fails to conform with the zoning regulations of the town has yet to be addressed by our courts." Wronski v. WoodburyZoning Commission, Superior Court, judicial district of Waterbury, Docket No. 156700 (January 31, 2001, Leheny, J.). Judges of the Superior Court, however, including the court in Wronski v. Woodbury Zoning Commission, have utilized a "substantial compliance" test when deciding the legality of a zoning action that does not conform to a regulation. "Substantial compliance with a statute or regulation is such compliance with the essential requirements of the statute or regulation as is sufficient to assure its objectives. What constitutes a substantial compliance is a matter depending on the facts of each particular case." DeAngelis v.Waterbury Inlands Wetlands Watercourses Commission, Superior Court, judicial district of Waterbury, Docket No. 132755 (May 16, 1997,Pellegrino, J.). See also Sorrow v. Zacchera, Superior Court, judicial district of Hartford, Docket No. 580072 (December 23, 1998, Teller, J.). There is, in the present case, not even minimal compliance with the section of the town's zoning regulations which requires immediate access to an existing public water system as a precondition to the establishment of a SRD. Indeed, the commission has simply dispensed with the requirement. The court finds, therefore, that the commission's approval of the subject zone change was illegal and an abuse of its discretion and, accordingly, sustains the plaintiffs' appeal.[8]
CT Page 16817
THOMAS G. WEST, J.